Docket No. 94112–Agenda 14–January 2003.

BILL KROHE, Appellee, v. THE CITY OF BLOOMINGTON, Appellant.

Opinion filed March 20, 2003.

JUSTICE THOMAS delivered the opinion of the court:

The sole issue in this appeal is whether, under section 10(a) of the Public Safety Employee Benefits Act (Act) (820 ILCS 320/10 (West 2000)), the phrase “catastrophic injury” is synonymous with an injury resulting in a line-of-duty disability under section 4–110 of the Illinois Pension Code (Code) (40 ILCS 5/4–110 (West 2000)). We hold that it is.

BACKGROUND

Plaintiff, Bill Krohe, was a firefighter employed by defendant, the City of Bloomington. In June 2000, and pursuant to section 4–110 of the Code, the City’s pension board awarded plaintiff a line-of-duty disability pension for injuries sustained in the line of duty.
(footnote: 1) Shortly thereafter, plaintiff asked the City to continue paying his and his family’s health insurance premiums, as required by section 10(a). Insisting that section 10(a) did not mandate such payment, the City declined plaintiff’s request. Plaintiff then filed a complaint for declaratory relief. The circuit court of McLean County ruled in plaintiff’s favor and ordered the City to continue paying plaintiff’s health insurance premiums. The City appealed, and, with one justice dissenting, the appellate court affirmed. 329 Ill. App. 3d 1133. We granted the City’s petition for leave to appeal. 177 Ill. 2d R. 315(a).

ANALYSIS

The fundamental rule of statutory construction is to ascertain and give effect to the legislature’s intent. 
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 503-04 (2000). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning.
 Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 479 (1994). Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. 
Davis v. Toshiba Machine Co., America
, 186 Ill. 2d 181, 184-85 (1999). If the statutory language is ambiguous, however, we may look to other sources to ascertain the legislature’s intent. 
People v. Ross
, 168 Ill. 2d 347, 352 (1995). The construction of a statute is a question of law that is reviewed 
de novo
. 
In re Estate of Dierkes
, 191 Ill. 2d 326, 330 (2000).

Section 10(a) provides:

“(a) An employer who employs a full-time *** firefighter, who *** suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer’s health insurance plan for the injured employee, the injured employee’s spouse, and for each dependent child of the injured employee until the child reaches the age of majority ***.” 820 ILCS 320/10(a) (West 2000).

The problem in this case arises from the fact that, although the legislature made section 10(a)’s application contingent upon the existence of a “catastrophic injury,” the Act nowhere defines “catastrophic injury.” The City maintains that the absence of a definition is of no consequence, however, as the phrase “catastrophic injury” unambiguously encompasses only those injuries that “severely limit the earning power of the affected employee.”
(footnote: 2) Plaintiff counters that the phrase is “ambiguous, uncertain, and subjective” and that its meaning is ascertainable only by examining the Act’s legislative history.

We agree with plaintiff. As used in section 10(a), the phrase “catastrophic injury” is ambiguous. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways. 
People v. Jameson
, 162 Ill. 2d 282, 288 (1994). In this case, “reasonably well-informed persons” have tendered no less than six distinct definitions of “catastrophic injury,” all of which purport to vindicate the legislature’s intent.

As mentioned above, the City initially argues that the phrase “catastrophic injury” encompasses only those injuries that “
severely limit the earning power
 of the affected employee.” (Emphasis added.) Elsewhere in its brief, the City contends that “a reasonable interpretation of [section 10(a)] is that the catastrophic injury be of such a nature that the firefighter is precluded, as a result of a line-of-duty injury, from obtaining gainful employment elsewhere 
which provides a salary comparable to that of a firefighter
.” (Emphasis added.) The City then endorses yet a third construction of “catastrophic injury,” that articulated by the appellate court in 
Villarreal v. Village of Schaumburg
, 325 Ill. App. 3d 1157 (2001). In 
Villarreal
, the court held that a “catastrophic injury” is one that is “financially ruinous,” rendering a firefighter “incapable of engaging in 
any
 gainful employment.” (Emphasis in original.) 
Villarreal
, 325 Ill. App. 3d at 1163. In his dissent below, Justice Steigmann posits that “
whatever it means
, it means something more than a duty-related injury which qualifies a firefighter for a line-of-duty disability pension.” (Emphasis added.) 329 Ill. App. 3d at 1141 (Steigmann, J., dissenting). The Villages of Schaumburg and Skokie, as 
amicus
 in this appeal, maintain that catastrophic injuries are those “that approach a life-threatening status and/or that 
interfere with
 an individual’s earning capacity.” (Emphasis added.) Finally, both plaintiff and the Associated Firefighters of Illinois, as 
amicus
, insist that any injury that renders a person permanently unable to engage in his or her chosen profession is, by definition, “catastrophic.”

Significantly, not one of the six definitions set forth above relies exclusively upon section 10(a)’s plain language. On the contrary, the definitions advanced by or in support of the City derive from four distinct dictionary definitions of “catastrophe,” as well as from statutory definitions borrowed from other jurisdictions. Similarly, the definitions advanced by or in support of plaintiff come not from section 10(a) itself but from section 10(a)’s legislative history. And while all of these definitions are to some degree “reasonable,” none of them are either compelled or foreclosed by the statute’s plain language. We therefore hold that the phrase “catastrophic injury,” as used in section 10(a), is ambiguous.

In reaching this result, we note that even the definitions proffered by the City do nothing to resolve section 10’s ambiguity, as they fail to identify with any degree of certainty or predictability what types of injuries qualify as “catastrophic.” Indeed, one point on which plaintiff and the City agree is that blindness and loss of limb are textbook examples of “catastrophic” injuries under section 10(a). Yet neither blindness nor loss of limb renders a firefighter “incapable of engaging in 
any
 gainful employment,” which the City at one point insists is the 
sine qua non
 of a “catastrophic injury.” Nor do these injuries necessarily preclude a firefighter from “obtaining gainful employment elsewhere which provides a salary comparable to that of a firefighter,” the City’s alternative standard for evaluating whether an injury is “catastrophic.” At the same time, however, both blindness and loss of limb instantly terminate a firefighter’s ability to pursue his chosen profession, a definition of “catastrophic” that plaintiff endorses but the City categorically rejects. Thus, even as defined by the City, “catastrophic injury” remains steadfastly ambiguous.

Because the phrase “catastrophic injury” is ambiguous, we may look beyond the Act’s language to ascertain its meaning. 
In re D.D.
, 196 Ill. 2d 405, 419 (2001). To this end, a statute’s legislative history and debates are “[v]aluable construction aids in interpreting an ambiguous statute.” 
Advincula v. United Blood Services
, 176 Ill. 2d 1, 19 (1996).

Here, the legislative history and debates could not be clearer. On November 14, 1997, the Illinois Senate debated whether to override Governor Edgar’s veto of House Bill 1347, which sought to enact the Public Safety Employee Benefits Act. Immediately prior to the vote, the bill’s sponsor, Senator Laura Kent Donahue, delivered the following remarks:

“I’d like to say for the sake of the record what we mean by catastrophically injured. What it means is that it is our intent to define ‘catastrophically injured’ as a police officer or firefighter who, due to injuries, has been forced to take a line of duty disability.” 90th Ill. Gen. Assem., Senate Proceedings, November 14, 1997, at 136 (statements of Senator Donahue).

At the conclusion of Senator Donahue’s remarks, the Senate overrode the Governor’s veto of House Bill 1347 by a vote of 58 to 1.

In light of Senator Donahue’s remarks, which were delivered for the sole purpose of defining for the record “catastrophic injury,” plaintiff urges us to likewise construe “catastrophic injury” as any injury that results in a line-of-duty disability under section 4–110 of the Code. Unfortunately, it is not that simple. While Senator Donahue’s statement of legislative intent could not be clearer, it alone cannot control the outcome of this case. As the City correctly points out, Senator Donahue’s statement was made only after the Governor vetoed House Bill 1347 and therefore played no role in the General Assembly’s initial decision to enact section 10(a). By itself, then, Senator Donahue’s statement is of only limited value in ascertaining the legislature’s intent.

That said, the legislative history of House Bill 1347, both prior to and following the Governor’s veto, is replete with statements of legislative intent that fully comport with Senator Donahue’s November 14, 1997, remarks. Immediately prior to the House of Representatives’ initial vote on House Bill 1347, the Bill’s sponsor, Representative Art Tenhouse, advised his colleagues as follows:

“1347 is a simple Bill. It simply provides that full-time law enforcement officers and firefighters that are killed
 or disabled in the line of duty
, we’re going to continue the health benefits for the officer’s children and spouse.” (Emphasis added.) 90th
 Ill. Gen. Assem., House Proceedings, April 14, 1997, at 180 (statements of Representative Tenhouse).

Following the conclusion of these remarks, House Bill 1347 passed by a vote of 113 to 4. Similarly, immediately prior the Senate’s initial vote on House Bill 1347, Senator Donahue advised her colleagues:

“And what this does is that it provides that for full-time law enforcement officers and firefighters that are killed
 or disabled in the line of duty
 shall continue the health benefits for the officer or the firefighter, their spouses and their children.” (Emphasis added.) 90th Ill. Gen. Assem., Senate Proceedings, May 16, 1997, at 192 (statements of Senator Donahue).

Following these remarks, the Senate passed House Bill 1347 by a vote of 53 to 1. Finally, immediately prior the House’s vote to override Governor Edgar’s veto of House Bill 1347, Representative Tenhouse reminded the chamber:

“House Bill 1347 *** [p]rovides that employers of full-time law enforcement and firefighters who are killed or
 disabled in the line of duty
, shall continue health benefits for the officer or firefighter and the spouse and children thereof.” (Emphasis added.) 90th
 Ill. Gen. Assem., House Proceedings, October 28, 1997, at 16 (statements of Representative Tenhouse).

Following these remarks, House Bill 1347 once again was passed, this time by a vote of 115 to 1.

Thus, contrary to the City’s position, Senator Donahue’s announcement that a “catastrophically injured” firefighter is synonymous with a “firefighter who, due to injuries, has been forced to take a line of duty disability” is not an isolated “eleventh hour” statement. Rather, as the foregoing account demonstrates, both of the Bill’s sponsors were concerned from the outset with line-of-duty disabilities, explicitly informing their colleagues of the Bill’s focus immediately prior to every vote. In light of this unambiguous legislative history, and in light of section 10(a)’s facial ambiguity, we will defer to the legislature’s judgment. Accordingly, like the appellate and circuit courts below, we construe the phrase “catastrophic injury” as synonymous with an injury resulting in a line-of-duty disability under section 4–110 of the Code.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

Affirmed
.

FOOTNOTES
1:     
1
Line of duty disability pensions are paid to firefighters who “as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, [are] found *** to be physically or mentally permanently disabled for service in the fire department.” 40 ILCS 5/4–110 (West 2000). 

2:     
2
As discussed further below, this is but one of several definitions tendered by the City.