No. 2--07--0569    Filed: 3-28-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| TIMOTHY PHALIN, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--MR--22 |
| | ) | |
| THE McHENRY COUNTY SHERIFF'S | ) | |
| DEPARTMENT, | ) | Honorable |
| | ) | Maureen P. McIntyre, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Timothy Phalin, filed a two-count complaint in the circuit court of McHenry County against defendant, the McHenry County sheriff's department. Count I sought a declaratory judgment that, pursuant to section 10 of the Public Safety Employee Benefits Act (Act) (820 ILCS 320/10 (West 2004)), defendant was obligated to pay premiums on its health insurance plan for plaintiff and his "qualifying family members." Count II sought an award of attorney fees pursuant to section 1 of the Attorneys Fees in Wage Actions Act (705 ILCS 225/1 (West 2004)). The trial court entered summary judgment for defendant on both counts and plaintiff brought this appeal. We reverse and remand.

Section 10 of the Act provides, in pertinent part:

"(a) An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who *** suffers a catastrophic injury or is killed

in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support. *** If the injured employee subsequently dies, the employer shall continue to pay the entire health insurance premium for the surviving spouse until remarried and for the dependent children under the conditions established in this Section. ***

* * *

(b) In order for the law enforcement, correctional or correctional probation officer, firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred as the result of the officer's response to fresh pursuit, the officer or firefighter's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act." 820 ILCS 320/10 (West 2004).

In count I of his complaint, plaintiff alleged that on November 21, 1998, and August 23, 2001, while employed by defendant as a full-time correctional officer, he injured his neck during altercations with inmates of the McHenry County jail. Plaintiff further alleged that in both incidents he was responding to what he reasonably believed to be an emergency, an unlawful act, or both. According to the complaint, in November 2001, as a result of one or both of the injuries, plaintiff became unable to perform his duties as a correctional officer. Plaintiff's responses to a request to admit served by defendant indicate that, in addition to the neck injuries suffered in November 1998

and August 2001, plaintiff injured his neck in January 1999 when a chair collapsed, and he injured his back during a training exercise on November 1, 2001. Plaintiff further admitted that, in June 2003, his employment with defendant terminated, and he obtained employment as a financial services associate with an insurance company. Plaintiff received temporary disability benefits from the Illinois Municipal Retirement Fund (IMRF) under section 7--146 of the Illinois Pension Code (Code) (40 ILCS 5/7--146 (West 2004)) from November 2002 until at least June 2003. Plaintiff was never awarded total and permanent disability benefits under section 7--150 of the Code (40 ILCS 5/7--150 (West 2004)).

In count II, plaintiff alleged that he made a demand in writing to defendant "for an amount not exceeding the amount actually due and owing to him pursuant to the [Act]" and was therefore statutorily entitled to an award of attorney fees.

Defendant moved for summary judgment on both counts. In support of its motion, defendant argued that, in the case of a correctional officer, a catastrophic injury is one for which the officer is entitled to receive total and permanent disability benefits from the IMRF pursuant to section 7--150 of the Code, which applies to municipal employees who are disabled from engaging in any gainful activity. Defendant argued that plaintiff did not qualify for the section 7--150 benefits because, inter alia, he had obtained gainful employment as a financial services associate. Therefore, according to defendant, plaintiff did not suffer a catastrophic injury within the meaning of the Act. Defendant also argued that two of the four injuries plaintiff suffered--the second and the fourth--did not meet the criteria of section 10(b) of the Act. With respect to count II, defendant argued that plaintiff failed to satisfy the demand requirement of the Attorneys Fees in Wage Actions Act because his demand letter did not set forth a specific sum.

Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2--1005(c) (West 2004). "The purpose of a summary judgment proceeding is not to try an issue of fact, but rather to determine whether one exists." Mydlach v. DaimlerChrysler Corp., 226 Ill. 2d 307, 311 (2007). Summary judgment should be allowed only "when the right of the moving party is clear and free from doubt." Purtill v. Hess, 111 Ill. 2d 229, 240 (1986). The trial court's ruling on a summary judgment motion is subject to de novo review. Jones v. Chicago HMO Ltd. of Illinois, 191 Ill. 2d 278, 291 (2000).

Employers subject to the Act must pay for health insurance coverage for a public safety employee (and his or her spouse and dependent children) when the employee suffers a "catastrophic injury" under the circumstances specified in section 10(b). Defendant suffered four injuries. There is no dispute that the first and third--which arose from altercations with jail inmates--meet the criteria of section 10(b). Likewise there is no dispute that the second and fourth injuries do not meet those criteria. The principal issue is whether plaintiff suffered a "catastrophic" injury.

In Krohe v. City of Bloomington, 204 Ill. 2d 392 (2003), our supreme court considered whether a firefighter who had been awarded a line-of-duty disability pension under section 4--110 of the Code was also entitled to benefits under the Act. In arguing that he was not, his municipal employer insisted that the term "catastrophic injury" embraces only injuries that " 'severely limit the earning power of the affected employee' " (Krohe, 204 Ill. 2d at 395) or render the employee " 'incapable of engaging in any gainful employment' " (emphasis in original) (Krohe, 204 Ill. 2d at 397). Our supreme court disagreed. Concluding that the term is ambiguous, the court surveyed the legislative debates on the bill proposing the Act. The court cited statements to the effect that the Act

was designed to provide continuing health coverage for law enforcement officers and police officers who are disabled in the line of duty and for their families. The Governor vetoed the bill, but the General Assembly voted to override the veto. The Krohe court noted:

"Immediately prior to the vote [to override the veto], the bill's sponsor *** delivered the following remarks:

'I'd like to say for the sake of the record what we mean by catastrophically injured. What it means is that it is our intent to define "catastrophically injured" as a police officer or firefighter who, due to injuries, has been forced to take a line of duty disability.' [Citation.]" Krohe, 204 Ill. 2d at 398.

Based on this statement, the Krohe court construed the term "catastrophic injury" "as synonymous with an injury resulting in a line-of-duty disability under section 4--110 of the Code." Krohe, 204 Ill. 2d at 400.

In O'Loughlin v. Village of River Forest, 338 Ill. App. 3d 189 (2003), decided eight days after Krohe, the appellate court applied similar reasoning in a case involving a municipal police officer's right to benefits under the Act. The O'Loughlin court concluded that "the legislature of Illinois intended for the Act to cover police officers and firefighters who were forced to take a line-of-duty disability." O'Loughlin, 338 Ill. App. 3d at 197.

Under Krohe and O'Loughlin, municipal police officers and firefighters need not establish that they are disabled from engaging in any gainful activity. Section 4--110 of the Code provides for a line-of-duty disability pension where a firefighter, "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found *** to be *** permanently disabled for service in the fire department." (Emphasis

added.) 40 ILCS 5/4--110 (West 2004) (applicable to firefighters employed by municipalities with fewer than 500,000 inhabitants); see also 40 ILCS 5/6--112, 6--151 (West 2004) (applicable to firefighters employed by municipalities with more than 500,000 inhabitants). Section 3--114.1 of the Code provides for a line-of-duty disability pension when a municipal police officer, "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be *** disabled for service in the police department." (Emphasis added.) 40 ILCS 5/3--114.1 (West 2004) (applicable to police officers in municipalities with fewer than 500,000 inhabitants); see also 40 ILCS 5/5--115, 5--154 (West 2004) (applicable to police officers employed by municipalities with more than 500,000 inhabitants).

The problem here, as defendant correctly observes, is that, because plaintiff is neither a municipal police officer nor a municipal firefighter, he is ineligible for line-of-duty disability pension benefits under the particular statutory provisions applicable to the public safety employees in Krohe and O'Loughlin. If a line-of-duty disability pension were available under some other statute, it might stand to reason that, in accordance with the analysis in Krohe and O'Loughlin, that statute would govern eligibility for benefits under the Act. Unfortunately that is not the case here.

Plaintiff is a participating employee in the IMRF, which is governed by article 7 of the Code. Defendant argues that section 7--150 governs plaintiff's right to benefits under the Act. Section 7--150(a)(1) provides for payment of total and permanent disability benefits to participating employees who are, inter alia, "unable to engage in any gainful activity." 40 ILCS 5/7--150(a)(1) (West 2004). However, neither eligibility for nor the amount of benefits under section 7--150 depends in any way on whether the employee was disabled in the line of duty. Moreover, the General Assembly has specifically used the term "duty disability" or "line of duty" to describe the

pension benefits available to municipal police officers and firefighters in sections 3--114.1, 4--110, 5--154, and 6--151 of the Code. 40 ILCS 5/3--114.1, 4--110, 5--154, 6--151 (West 2004). Section 7--150 uses no such language.[1] Thus section 7--150 simply has no bearing on the central inquiry under Krohe: whether a public safety employee suffered an injury resulting in a line-of-duty disability.

In the trial court, defendant cited section 367h(3)(a) of the Illinois Insurance Code (215 ILCS 5/367h(3)(a) (West 2004)) in support of its argument that plaintiff's eligibility for benefits under the Act must be determined with reference to article 7 of the Code. Section 367h permits a "deputy" to continue group health insurance at his own expense during a disability period that "begins on the day the deputy is removed from [the] sheriff's police department payroll because *** the deputy's disability is established under Article 7 of the Illinois Pension Code." 215 ILCS 5/367h(3)(a) (West 2004). Defendant's reason for invoking this statute is not altogether clear. Apparently, defendant hoped to bolster its argument that article 7 is the applicable pension law for purposes of determining a sheriff's corrections officer's rights under the Act. However, section 367h does not the fix the basic flaw in defendant's argument: article 7 does not provide for line-of-duty benefits, so it is not germane to the test set forth in Krohe and O'Loughlin.

Defendant's reliance on section 367h is misplaced for the additional reason that, in all likelihood, plaintiff was not a "deputy" within the meaning of that provision. Section 367h(2) defines "deputy" as a "sheriff's law enforcement employee." 215 ILCS 5/367h(2) (West 2004).

---

[1]The General Assembly has similarly differentiated "line of duty" and "duty disability" benefits from "occupational disability benefits" available to a broad range of state employees. See 40 ILCS 5/14--123 (West 2004).

Subject to exceptions that are not applicable here, "sheriff's law enforcement employee" means "[a] county sheriff and all deputies, other than special deputies, employed on a full time basis in the office of the sheriff." 40 ILCS 5/7--109.3(a)(1) (West 2004). Where a county has created a Sheriff's Office Merit Commission, all full-time deputy sheriffs are within the jurisdiction of the Sheriff's Merit System Law (55 ILCS 5/3--8001 et seq. (West 2004)). Roche v. County of Lake, 205 Ill. App. 3d 102, 109 (1990). McHenry County has a merit commission for deputies, but since February 16, 1988,[2] jail officers have been excluded from the merit system and have been "hired pursuant to a nonmerited system administered by the Sheriff." Goodwin v. McHenry County Sheriff's Department Merit Comm'n, 316 Ill. App. 3d 1238, 1240-41 (2000). Because jail officers are not merit system employees, they cannot be deputies and, therefore, are not sheriff's law enforcement employees.

There is no merit to defendant's position that a sheriff's correctional officer must suffer a total and permanent disability to qualify for health insurance coverage under the Act. As seen, it was the intent of the General Assembly that health insurance be maintained for public safety employees who are disabled in the line of duty, whether or not the disability prevents the employee from performing another type of employment. However, because there is no statute providing a line-of-duty disability pension, as such, to a sheriff's correctional officer, we must craft an appropriate test for determining whether a disability was incurred in the line of duty.[3] In our view, the test that applies to municipal

_____

[2]Plaintiff testified at his deposition that he joined the McHenry County sheriff's office in 1992.

[3]In doing so, we are cognizant that the term "line of duty" may have different meanings in different contexts, even as applied to a single category of public safety employee. See Swanson v. Village of Lake in the Hills, 233 Ill. App. 3d 58, 66-67 (1992) (holding that, for purposes of

police officers is a valuable source of guidance. Like police officers, who are charged with the responsibility to maintain public order and safety within the general population, correctional officers are responsible for maintaining safety within the inmate population of a correctional facility. To be entitled to a line-of-duty disability pension, a police officer's disability must be connected to an "act of duty," the essence of which is the existence of a "special risk, not ordinarily assumed by a citizen in the ordinary walks of life." 40 ILCS 5/5--113 (West 2004). A correctional officer's encounters with potentially violent inmates entail this sort of risk. Thus, we hold that a sheriff's correctional officer's disability resulting from altercations with inmates is sustained in the line of duty.

The remaining question is one of causation. Plaintiff became unable to perform the work of a correctional officer after injuring his neck and back in four separate incidents. The first and third incidents--altercations with inmates--undisputedly satisfy the criteria of section 10(b) of the Act. On the other hand, it is also undisputed that the second incident and the final one do not satisfy those criteria. Plaintiff posits, however, that the Act does not limit benefits to a disability that "stems from a single qualifying injury." He cites International Harvester Co. v. Industrial Comm'n, 46 Ill. 2d 238 (1970), which held that, where a worker is disabled after suffering an occupational injury and a subsequent nonoccupational injury, the worker is entitled to worker's compensation benefits if "the existing employment-connected condition is a causative factor in producing either the subsequent injury or the subsequent disability." International Harvester Co., 46 Ill. 2d at 247. We see no reason why a similar rule of causation should not apply here. Thus, if plaintiff's "qualifying" injuries--those

_____

conferring disability benefits on a municipal police officer, the term "line of duty" is used less restrictively in the Public Employee Disability Act (5 ILCS 345/1 (West 2004)) than in applicable provisions of the Code).

suffered as a result of altercations with inmates--were a causative factor in his disability, they were "catastrophic" and he should receive benefits under the Act. What role, if any, those injuries played in disabling plaintiff from performing the duties of a correctional officer is a question of fact precluding the entry of summary judgment.

Accordingly, the trial court erred in entering summary judgment on count I of the complaint. The trial court also entered summary judgment for defendant on count II of the complaint, which is predicated on section 1 of the Attorneys Fees in Wage Actions Act (705 ILCS 225/1 (West 2004)). Section 1 provides, in pertinent part:

"Whenever [an] *** employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action." 705 ILCS 225/1 (West 2004).

The trial court correctly reasoned that plaintiff could not prevail on count II unless he also prevailed on count I. Thus, because the trial court entered summary judgment on count I, it concluded that defendant was necessarily entitled to summary judgment on count II as well. However, because the entry of summary judgment on count I was error, the disposition of count II cannot be sustained on this basis.

In the trial court, defendant argued that plaintiff's written demand was inadequate because it did not set forth a specific sum. Plaintiff's letter to defendant provided, in pertinent part, as follows:

"I have incurred $1,569.98 in expenses to pay for health insurance premiums to date, and additional expenses will accrue in the future.

By this letter, I am demanding that McHenry County immediately pay any and all health insurance premiums for myself and my qualifying family members pursuant to the [Act].

This request is also being made pursuant to the Attorneys Fees in Wage Action Act ***. If the County fails to take immediate action to pay the sum of $5,742.09 for past health insurance premiums and thereafter pay all future premiums as they come due pursuant to the [Act], please be advised that an action seeking a declaratory judgment and for attorney's fees will be filed in the Circuit Court."

Defendant argued that the demand was improper because it set forth two different sums. The argument is meritless. Although plaintiff refers to having incurred $1,569 to pay for health insurance, he makes but one demand in connection with his statutory right to collect attorney fees. Plaintiff specifically sets forth the sum of $5,742.09 as the amount the county must pay to avoid a lawsuit seeking declaratory judgment and attorney fees. It is this amount, and this amount alone, that represents plaintiff's demand for purposes of his statutory claim for attorney fees. Accordingly, the entry of summary judgment on count II was error.

For the foregoing reasons, we reverse the judgment of the circuit court of McHenry County and remand for further proceedings.

Reversed and remanded.

GROMETER and ZENOFF, JJ., concur.