BRIAN J. LEMMENES, Plaintiff-Appellee, v. ORLAND FIRE PROTECTION DISTRICT *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—09—1133

Opinion filed March 23, 2010.

Klein, Thorpe & Jenkins, Ltd., of Chicago (Jacob Karaca, of counsel), for appellants.

Law Offices of Thomas W. Duda, of Arlington Heights, for appellee.

Cornfield & Feldman, of Chicago (Gilbert Feldman, of counsel), for *amicus curiae.*

PRESIDING JUSTICE CUNNINGHAM delivered the opinion of the court:

This appeal arises from the grant of a motion for summary judgment in favor of the plaintiff, Brian Lemmenes, against defendants Orland Fire Protection District and the Board of Trustees of the Orland Fire Protection District (collectively, Orland Fire) by the circuit court of Cook County. On appeal, Orland Fire argues that the circuit court erred in finding that the requirements for health insurance coverage benefits under section 10(b) of the Public Safety Employee Benefits Act were satisfied (820 ILCS 320/10(b) (West 2006)). For the following reasons, we affirm the ruling of the circuit court of Cook County.

## BACKGROUND

On August 17, 2001, the plaintiff was serving as a lieutenant with Orland Fire when he injured his right knee in the course of testing a fire hose. The plaintiff's job duties at that time involved fire suppression activities and emergency medical services. On September 17, 2002, the plaintiff reinjured his right knee during a training exercise. The training exercise was performed at an abandoned industrial building in Mokena, Illinois, and firefighters from different fire departments simultaneously participated in the training. Orland Fire used

this training exercise to partially fulfill its training requirements under the Illinois Department of Labor guidelines.

At the plaintiff's discovery deposition, he testified that he was required to participate in the September 17, 2002, training exercise as a part of his firefighting duties and that he would have been disciplined had he refused to participate. On that day, the plaintiff and other Orland Fire firefighters arrived at the location of the training exercise on a fire engine with its emergency warning lights activated. The plaintiff testified that the training exercise was "done under emergency circumstances" and that Mokena's assistant fire chief, Howard Stephens, informed the firefighters to "respond as if it were an actual emergency." The plaintiff was also informed that "there was a firefighter that was trapped inside [the] building, *** that he was running out of air, that his personal distress alarm was going off, and that [the firefighters] needed to locate him and rescue him or he would perish." The plaintiff further testified that he suffered his knee injury while "twisting and turning and pulling this individual[,] trying to free him" from an unknown restraint.

Howard Stephens' deposition testimony revealed that he designed and oversaw the September 17, 2002, training exercise in Mokena, Illinois. He testified that the training exercise was modeled after a real-life fire tragedy in Phoenix, Arizona, during which Phoenix firefighters were unsuccessful in rescuing a fellow firefighter from a burning industrial building. The purpose of the training exercise, while not disclosed to the firefighters, was to impress upon them that rescue techniques employed in a residential building could not be used in an industrial setting. Stephens stated that the firefighters arrived at the training location in "full turn out gear," as they would have in an actual emergency situation, and that the firefighters' masks were "blacked out" during the training exercise in order to simulate "live fire situations." However, nothing was actually on fire during the training exercise.

Subsequently, the plaintiff underwent knee surgery but was unable to return to full-duty work as a lieutenant at Orland Fire. In August 2004, the plaintiff was awarded a line-of-duty disability pension benefit from the Orland Fire pension fund.

On July 27, 2005,[1] the plaintiff applied for a continuation of health insurance coverage benefits under the Public Safety Employee Benefits Act (820 ILCS 320/10 (West 2006)), which Orland Fire subsequently

---

[1]Although it is unclear from the record on appeal, there is some indication that the plaintiff started applying for a continuation of health insurance benefits prior to this date.

denied. In September 2005, the plaintiff's employment with Orland Fire terminated.

On July 25, 2006, the plaintiff filed a declaratory judgment action in the circuit court of Cook County against Orland Fire, requesting that Orland Fire be ordered to pay health insurance premiums on behalf of the plaintiff and his dependents pursuant to section 10 of the Public Safety Employee Benefits Act (820 ILCS 320/10 (West 2006)), and that Orland Fire be ordered to reimburse the plaintiff for health insurance premiums which he paid in order to prevent his health insurance coverage from lapsing. In October 2008, the plaintiff and Orland Fire filed cross-motions for summary judgment. On April 8, 2009, the circuit court granted summary judgment in favor of the plaintiff and made the following pertinent findings:

> "[F]actual assertions concerning the conduct that [the] plaintiff was engaged in at the time he sustained his injury, [the] plaintiff's view of the training exercise based upon what he was told by officials arranging for the exercise that day and the circumstances involved in setting up the training exercise that [the] plaintiff has cited to in his and [Stephens'] deposition transcripts are not contested and/or contradicted. Based upon the submissions, [the] plaintiff has demonstrated that there is no genuine issue of material fact that at the time [the] plaintiff sustained his injury and for purposes of application of [section 10(b)], [the] plaintiff was actively engaged as if he was responding to what could reasonably have been believed to have been an emergency situation because that is what the exercise required of him and he reasonably believed that he was responding to an emergency under the uncontradicted circumstances involved in the training exercise."

On April 21, 2009, Orland Fire filed a timely notice of appeal before this court. On August 27, 2009, this court allowed the filing of an *amicus curiae* brief by the Associated Firefighters of Illinois.

## ANALYSIS

The sole issue on appeal before this court is whether the requirements under section 10 of the Public Safety Employee Benefits Act (820 ILCS 320/10 (West 2006)) were satisfied so as to entitle the plaintiff and his dependents to health insurance coverage benefits.

■ As an initial matter, the parties disagree on the proper standard of review. The plaintiff argues that we should apply a "manifest weight of the evidence" standard because Orland Fire, in its brief before this court, made a "factual dispute" that was unsupported by the record—namely, that all participants of the September 17, 2002, training exercise were informed of "all of the plans, routes, hazards and outcome" of the training exercise. Orland Fire, on the other hand,

urges this court to apply *de novo* review to the circuit court's decision to grant the plaintiff's motion for summary judgment.

Summary judgment is proper when "pleadings, affidavits, depositions and admissions of record, when viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *McLear v. Village of Barrington*, 392 Ill. App. 3d 664, 669-70, 910 N.E.2d 644, 649 (2009); see also 735 ILCS 5/2—1005(c) (West 2006). We find that *de novo* review is the appropriate standard for reviewing the circuit court's decision to grant summary judgment in favor of the plaintiff. See *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 404, 910 N.E.2d 85, 91 (2009) (*de novo* review is appropriate where the appeal arises from an order granting summary judgment). A *de novo* standard of review is also proper because the issue before us on appeal involves a matter of statutory construction. See *Stern*, 233 Ill. 2d at 404, 910 N.E.2d at 91. We reject the plaintiff's reliance on *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 692 N.E.2d 295 (1998), and *Wilfert v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 318 Ill. App. 3d 507, 742 N.E.2d 368 (2000), to support an argument that a more deferential standard of review should be applied. We find that those cases involved appeals from decisions made by administrative agencies and have no applicability to the case at bar. As Orland Fire correctly points out, the case before this court does not involve administrative review or a writ of *certiorari*. Rather, the plaintiff brought this action against Orland Fire before the circuit court as a declaratory judgment action, and at no point did the plaintiff amend his complaint for declaratory judgment to include an administrative review of his claims or a writ of *certiorari*. Moreover, we reject the plaintiff's argument for a more deferential review of the circuit court's decision based on a "factual dispute" in Orland Fire's brief before this court. We find such argument inapposite, particularly because both parties, having filed cross-motions for summary judgment in the circuit court, waived any claimed issues of material fact. See, *e.g.*, *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334, 830 N.E.2d 760, 769 (2005) ("[w]hen parties file cross-motions for summary judgment, the court is invited to decide the issue on summary judgment as a matter of law"). Accordingly, we apply a *de novo* standard of review to resolve the issue before this court.

■ Turning to the merits of the appeal, we determine whether the requirements under section 10 of the Public Safety Employee Benefits Act (Act) (820 ILCS 320/10 (West 2006)) were satisfied so as to entitle the plaintiff and the plaintiff's eligible dependents to health insurance coverage benefits.

Section 10 of the Act contains the following pertinent language:

"(a) [a]n employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who *** suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee ***. ***

(b) In order for the law enforcement, correctional or correctional probation officer, firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred as the result of the officer's response to fresh pursuit, the officer or *firefighter's response to what is reasonably believed to be an emergency*, an unlawful act perpetrated by another, or during the investigation of a criminal act. Nothing in this [s]ection shall be construed to limit health insurance coverage or pension benefits for which the officer, firefighter, spouse, or dependent children may otherwise be eligible." (Emphasis added.) 820 ILCS 320/10 (West 2006).

In statutory construction, a court should "ascertain and give effect to the legislature's intent." *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 394, 789 N.E.2d 1211, 1212 (2003). The legislature's intent may be discerned by the plain and ordinary meaning of the statutory language, and "[w]here the language is clear and unambiguous, [a court] must apply the statute without resort to further aids of statutory construction." *Krohe*, 204 Ill. 2d at 395, 789 N.E.2d at 1212. "Legislative intent must be ascertained from a consideration of the entire act, its nature, its object, and the consequences resulting from different constructions." *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 494, 791 N.E.2d 516, 519 (2003). Further, a statute "must be construed as a whole and, if possible, in a manner such that no term is rendered meaningless or superfluous." *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524, 778 N.E.2d 683, 692 (2002). Thus, sections 10(a) and 10(b) of the Act must be construed together and the requirements of each section must be met before the plaintiff and his dependents may be eligible for health insurance coverage benefits. See *Phalin v. McHenry County Sheriff's Department*, 381 Ill. App. 3d 185, 188, 886 N.E.2d 448, 451 (2008) ("[e]mployers subject to the Act must pay for health insurance coverage for a public safety employee [and his eligible family members] when the employee suffers a 'catastrophic injury' under the circumstances specified in section 10(b)"); see generally *Bahr v. Bartlett Fire Protection District*, 383 Ill. App. 3d 68, 76, 889 N.E.2d 760, 767 (2008) (injury must be catastrophic and have occurred in response to an emergency in order for health insurance coverage benefits to be awarded).

■ In the instant case, the parties do not dispute that the plaintiff suffered a "catastrophic injury" under section 10(a) of the Act. 820 ILCS 320/10(a) (West 2006). Thus, we only need to examine whether the requirements under section 10(b) of the Act were satisfied.

Orland Fire argues that the plaintiff's injury failed to meet the requirements of section 10(b) of the Act and that the circuit court's decision to grant the plaintiff's motion for summary judgment should be reversed. Specifically, Orland Fire argues that based on the plain and ordinary language of section 10(b), the plaintiff's injury did not occur in "response to what is reasonably believed to be an emergency" because his injury occurred in the course of a training exercise.

The plaintiff, however, argues that his injury met the requirements of section 10(b) of the Act because at the time of the training exercise, he reasonably believed the situation to be an emergency. Specifically, the plaintiff noted that he was ordered by superiors to rescue a firefighter, that the plaintiff "had no idea what would confront him," that the plaintiff was "unaware that the actual firefighters [in Phoenix] had been unsuccessful in rescuing the downed victim," and that the plaintiff "had no idea that his air supply would not last as long as he expected."

We note that the Act does not define the term "emergency" as it is used in section 10(b). 820 ILCS 320/10(b) (West 2006). However, in *DeRose v. City of Highland Park*, this court has held that a police officer was entitled to health insurance coverage benefits under section 10 of the Act when he was injured while investigating a false burglary alarm. *DeRose v. City of Highland Park*, 386 Ill. App. 3d 658, 665, 898 N.E.2d 1115, 1122 (2008). In determining that the police officer's injury satisfied section 10(b) of the Act (820 ILCS 320/10(b) (West 2006)), the *DeRose* court, using guidance from Webster's Third New International Dictionary, defined "emergency" as a situation that is "urgent and calls for immediate action." *DeRose*, 386 Ill. App. 3d at 660-61, 898 N.E.2d at 1118-19; see generally *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 774, 887 N.E.2d 569, 576 (2008) ("[w]hen determining the plain and ordinary meaning of words, a court may look to the dictionary if *** a word or phrase is undefined in the statute").

Applying the definition of "emergency" to the case at bar, we determine whether the plaintiff's injury was in "response to what is reasonably believed to be an emergency." 820 ILCS 320/10(b) (West 2006). Here, the plaintiff sustained his knee injury on September 17, 2002, during the "emergency rescue of a trapped firefighter." Although

the plaintiff was aware that he was participating in a training exercise, he was required to "respond as if it were an actual emergency" and was informed by his superiors that a firefighter was trapped inside a building, that the trapped firefighter was running out of oxygen, and that the plaintiff and other participants of the training exercise must "locate *** and rescue [the trapped firefighter] or he would perish." The plaintiff arrived at the location on a fire engine with its emergency warning lights activated, and he was dressed in "full turn out gear," as he would have been dressed in any emergency situation. Also, the plaintiff's mask was "blacked out" in order to simulate "live fire situations." Certainly these facts and circumstances presented a situation which was "urgent and call[ed] for immediate action."

Based on these circumstances, we find that the plaintiff's injury occurred in response to what was reasonably believed to be an emergency. The order given by the plaintiff's superiors to rescue a trapped firefighter under timed conditions during a training exercise elicited a sense of urgency that called for immediate action—to which the plaintiff responded with prompt attention. However, he was neither informed that the training exercise was designed such that the participating firefighters would likely fail, nor was he told beforehand that the purpose of the training exercise was to demonstrate how rescue techniques for residential settings would be ineffective in an industrial building. Although Orland Fire urges this court to narrowly interpret the term "emergency" under section 10(b) so that firefighters in general and the plaintiff in particular under these facts would never be eligible for the healthcare benefits outlined in the Act, we decline to do so under the facts of this case. The plain and ordinary language of the Act shows that the legislature did not intend to restrict emergency situations to one specific kind, nor did it intend to delineate training exercises as an exception to the ordinary meaning of the statute. See *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85, 710 N.E.2d 399, 401 (1999) (where a statute's language is clear and unambiguous, a court must not read into it any exceptions, limitations or conditions not expressly made by the legislature and must give the statute effect as written). Thus, we find that the term "emergency" is broad enough to encompass urgent situations that arise spontaneously during the course of the plaintiff's firefighting duties, such as occurred under the facts here, while the plaintiff participated in a training exercise. We further note that there was unrebutted evidence that the plaintiff, as a lieutenant with Orland Fire, had no choice but to participate in the September 17, 2002, training exercise and could not have refused to participate. Likewise, the training exercise was designed to impress upon the participating firefight-

ers the important differences in rescue techniques employed in different types of fires. These were skills which the plaintiff was expected to master in future emergency situations had he been able to return to work as a firefighter. Therefore, we find that the injury suffered by the plaintiff clearly occurred in the line of duty, in response to what he reasonably believed to be an emergency. This is patently consistent with the legislative intent of the Act. We need not resort to further aids of statutory construction given the clear and unambiguous language of the Act.

Orland Fire also makes a number of other arguments, which we find unpersuasive. For example, Orland Fire contends that the circuit court erroneously found that the plaintiff "actually believed" that he had been responding to an emergency, by noting that there could be no "reasonable belief" of an emergency if there was no "actual belief" on the part of the plaintiff. This argument does nothing to advance Orland Fire's position because it operates under the assumption that an "emergency" under section 10(b) of the Act can never occur during a training exercise. As discussed above, the plain language of the Act does not show that the legislature intended to exclude emergencies which occurred during training exercises such as in this case. Thus, as we have already discussed, this argument fails.

Orland Fire also argues that a "response" to an emergency under section 10(b) of the Act must be one that stemmed from a public call for help. Although many emergency situations to which firefighters respond often stem from a public call for help, we find that the plain language of the Act does not exclude responses to emergency situations which did not originate from such a call, and we decline to narrow the provisions of the Act by reading in restrictions which are not expressly stated. Here, the plaintiff was responding to his superiors' command to rescue a trapped firefighter, which we find met the requirements of section 10(b) of the Act. To interpret the statute as Orland Fire suggests would lead to the absurd result that injuries which occur in response to actual emergency situations which a firefighter personally observed, but which did not originate from a public call for help, could not be covered by the Act. Clearly such a result was not the legislative intent. Thus, we give effect to the statute as written and find that the plaintiff's injury occurred in response to what he reasonably believed to be an emergency.

Although we are mindful that the policy underlying this Act was designed to provide continuing health insurance benefits for firefighters and other law enforcement officers who are catastrophically injured in the line of duty, we note that our holding does not automatically entitle all firefighters or other law enforcement officers to health

insurance benefits simply because they suffered a catastrophic injury in the line of duty. Rather, as discussed above, the injuries must be sustained under circumstances as outlined in section 10(b) of the Act. See *DeRose*, 386 Ill. App. 3d at 664-65, 898 N.E.2d at 1121, citing *Phalin*, 381 Ill. App. 3d at 188-89, 886 N.E.2d at 451, citing *Krohe*, 204 Ill. 2d at 398, 789 N.E.2d at 1214-15. We reiterate that there is no automatic right of qualification for health insurance benefits under section 10(b) of the Act regardless of where the injury occurs. The facts and circumstances and the specific requirements outlined in section 10(b) will determine qualification. Accordingly, the unique facts and circumstances in this case compel a finding that the plaintiff was catastrophically injured in the line of duty and has satisfied the requirements of section 10(b) of the Act. Therefore, we hold that the circuit court correctly granted the plaintiff's motion for summary judgment.

Finally, we are aware of the recent majority holding in *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 397 Ill. App. 3d 679 (2009), an opinion issued by the sixth Division of this court. That opinion, issued shortly before the case at bar, appears to reach the opposite conclusion. As noted, we believe the requirements of section 10(b) of the Act mandate an analysis of the facts of each case. The facts of the instant case do not lend themselves to the holding reached by the majority in *Gaffney* and we decline to follow that holding. We note that there was a strongly worded dissent in *Gaffney* in which the dissenting judge rejects the extremely narrow construction of section 10(b) of the Act sought by Orland Fire. We believe that the analysis of the dissent in *Gaffney* regarding the legislative intent is more consistent with our own. See *Gaffney*, 397 Ill. App. 3d at 690-91 (Gordon, J., dissenting).

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HOFFMAN and KARNEZIS, JJ., concur.