THIRD DIVISION
MAY 28, 2008

1-06-2253

| | | |
|---|---|---|
| STEVEN G. BAHR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 04 CH 4075 |
| THE BARTLETT FIRE PROTECTION DISTRICT, | ) | |
| a Municipal Corporation, | ) | Honorable |
| | ) | David R. Donnersberger, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

The plaintiff, Steven G. Bahr, a firefighter employed by the defendant, Bartlett Fire Protection District (defendant), suffered disabling injuries in 2000 while performing his job duties and received disability benefits pursuant to the Public Employee Disability Act (Act) (5 ILCS 345/1(b) (West 2004)). The plaintiff returned to work after six months. In 2003, the plaintiff again suffered disabling injuries while performing his job duties. The plaintiff later sought additional benefits, and when those were denied, he filed a lawsuit in the circuit court of Cook County on March 5, 2004. The trial court granted summary judgment for the defendant on two counts of the plaintiff's amended complaint and dismissed the remaining counts with prejudice. The plaintiff timely appealed and raises the following issues: (1) whether the trial court erred in dismissing count III of the amended complaint, thereby denying the plaintiff's right to use the remaining six months of disability benefits to which he was entitled for the injury sustained in 2000; (2) whether the trial court erred in granting summary judgment for the defendant and against the plaintiff on the issue

1-06-2253

pertaining to the plaintiff's argument that his pay scale had been improperly reduced in violation of the Act, for purposes of computing his disability benefits following the June 5, 2003 injury; (3) whether the trial court erred in dismissing the plaintiff's claims for attorney fees; (4) whether the trial court erred in denying the plaintiff's motion to reconsider its ruling in light of the settlement of the plaintiff's claim by the Illinois Industrial Commission (IIC);[1] and (5) whether the trial court applied the proper evidentiary standard in deciding the issue of collateral estoppel related to the specific injury which rendered the plaintiff disabled. For the reasons that follow, we reverse the judgment of the circuit court of Cook County.

BACKGROUND

On September 10, 2000, the plaintiff was injured in the line of duty while removing a stove from a garage fire. On September 13, 2000, the plaintiff was again injured while lifting a patient into an ambulance. The plaintiff sought medical care after the September 13, 2000 injury and was diagnosed as requiring surgery to his lower back. The plaintiff was paid six months of benefits pursuant to the Act from September 13, 2000, through March 19, 2001, at which time he returned to work. On June 5, 2003, the plaintiff was again injured, this time while removing an oxygen tank from an ambulance. The plaintiff was paid 12 months of benefits for that injury pursuant to the Act from June 5, 2003, until June 5, 2004. On March 9, 2004, the plaintiff filed for disability pension benefits.

---

[1]On January 1, 2005, the Illinois Industrial Commission became the Illinois Workers' Compensation Commission.

2

On June 2, 2004, three days before his Act benefits were scheduled to cease, the plaintiff filed a two-count complaint in the circuit court of Cook County seeking a temporary restraining order enjoining the defendant from ceasing payments pursuant to the Act. The trial court declined to issue a restraining order, but granted the plaintiff leave to file an amended complaint. The plaintiff's amended complaint added counts III, IV, V, and VI. In count III of the amended complaint, the plaintiff alleged that he was entitled to six additional months of benefits, since his June 5, 2003 injury was an aggravation of his original injury of September 13, 2000. Both injuries were to the same area of the plaintiff's back. In count IV, the plaintiff sought an award of attorney fees arising from count III. In count V, the plaintiff sought payment of health insurance benefits pursuant to the Public Safety Employee Benefits Act (Benefits Act) (820 ILCS 320/10 (West 2004)). Count VI of the amended complaint sought an award of attorney fees arising from count V.

During the pendency of the trial court proceedings, the plaintiff filed a petition with the IIC seeking workers' compensation benefits. On August 17, 2004, the defendant, through its pension board (Board), awarded the plaintiff a line-of-duty disability pension of 65% of his salary effective August 18, 2004, based on the June 5, 2003 injury, pursuant to section 4-110 of the Illinois Pension Code (40 ILCS 5/4-110 (West 2004)). The Board found that the plaintiff was unable to perform his duties as a firefighter due to his back injury and that the injury was sustained on June 5, 2003, while he was performing work-related duties. Meanwhile, the defendant, Bartlett Fire Protection District filed a motion to dismiss counts III, IV, V and VI of the plaintiff's amended complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2004)). The defendant alleged that the plaintiff was not entitled to additional benefits under the Act as sought in count III;

that the injury that caused the plaintiff's disability was not a catastrophic injury in the line of duty as required to qualify for health insurance benefits pursuant to the Benefits Act as alleged in count V; and that the plaintiff was collaterally estopped from arguing that the September 13, 2000 injury was related to the June 5, 2003 injury. The defendant also alleged that the plaintiff was not entitled to any attorney fees whatsoever.

On December 10, 2004, the trial court granted the defendant's motion to dismiss counts III, IV, V and VI with prejudice. Twelve days later, the IIC entered a settlement contract lump-sum petition and order, in which the plaintiff received a settlement of $124,488.25, less attorney fees of $24,897.65 and $522.36 for medical costs, for a lump sum of $99,068.24. The IIC found that based on the plaintiff's injuries of September 10, 2000, September 13, 2000, and June 5, 2003, he was entitled to the amount awarded.

The plaintiff's subsequent motion to reconsider the order granting the defendant's motion to dismiss counts III, IV, V and VI was denied by the trial court. The defendant then filed a motion for summary judgment pursuant to section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2004)) as to the remaining counts I and II of the plaintiff's amended complaint. Regarding count I, the defendant asserted that the plaintiff was paid on the same basis as he was paid before the June 5, 2003 injury and therefore was not entitled to disability benefits at the higher rate of pay that he was earning at the time of the injury. The defendant also argued that the plaintiff was not entitled to attorney fees as he sought in count II. The trial court ruled in favor of the defendant, finding that the plaintiff was paid as outlined in the Act, although his pay for purposes of disability benefits had been decreased from the amount he was earning at the time of the June 5, 2003 injury.

4

The court also ruled that the plaintiff was not entitled to attorney fees as sought in count II of the amended complaint. This appeal followed.

ANALYSIS

We first address the issue of whether the plaintiff was entitled to receive benefits based on the salary he was being paid at the time of his June 5, 2003 injury as alleged in count I of his amended complaint. At the time of the injury, the plaintiff was being paid as a shift commander, an amount 5% higher than his pay as a firefighter. However, the defendant calculated the plaintiff's benefits under the Act based on the plaintiff's pay as a firefighter. The defendant's fire chief, William O'Boyle, asserted that the decision to return the plaintiff to his prior pay scale had been made before the plaintiff's injury. The plaintiff contends that because he was entitled to receive benefits based on his pay at the time of the injury, the reduction in his pay that occurred one month after his injury was a violation of the Act.

The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. "The construction of a statute is a question of law that is reviewed *de novo.*" Krohe v. City of Bloomington, 204 Ill. 2d 392, 395, 789 N.E.2d 1211, 1212-13 (2003).

Here, the Act provides in pertinent part:

"(b) Whenever an eligible employee suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the employing public entity *on the same basis* as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or

vacation, or service credits in a public employee pension fund during

the time he is unable to perform his duties due to the result of the

injury, but not longer than one year in relation to the same injury."

(Emphasis added.) 5 ILCS 345/1(b) (West 2004).

The defendant argues that the plaintiff was notified verbally on the morning of June 5, 2003, that the position change and reduction in pay would be effective on July 7, 2003. The plaintiff was injured later in the day on June 5, 2003. The defendant asserts that when the injury occurred, the plaintiff already knew of the impending position change and, therefore, the reduction in the plaintiff's pay for disability benefits actually meant the plaintiff was being paid on the same "basis" as before the injury. In support of it's argument, the defendant points out that the plaintiff was given a 4% salary increase on July 1, 2003, as a result of a collective bargaining agreement. That salary increase was not the result of a promotion or demotion, but given in accordance with a negotiated labor agreement, which benefitted all employees who were subject to the agreement. The thrust of the defendant's argument is that the decision to return the plaintiff to a lower pay scale, like the decision to give him a 4% raise, had been made prior to the injury. Consequently, neither the reduction in pay grade nor the 4% raise changed the "basis" of the plaintiff's pay. The defendant argues that both the raise and the reduction only changed the "rate" of the plaintiff's pay and this did not violate the Act. We do not agree.

Statutes are to be construed to give effect to the intent of the legislature, and the best indicator of the legislature's intent is the language of the statute. Doe v. Chicago Board of Education, 213 Ill. 2d 19, 24, 820 N.E.2d 418, 421 (2004). Where the statutory language is clear and

unambiguous, we will not depart from that clear language by finding exceptions, or conditions not contained in the language of the statute. Peterson v. Wallach, 314 Ill. App. 3d 823, 826, 733 N.E.2d 713, 715 (2000). There is no ambiguity in the language of this statute, which mandates:

> "(b) Whenever an eligible employee suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the employing public entity *on the same basis as he was paid before the injury.*" (Emphasis added.) 5 ILCS 345/1(b) (West 2004).

The plain language of the statute proscribes reducing an eligible employee's pay after that employee has suffered a disabling injury in the line of duty. We find no merit to the defendant's hair-splitting analysis regarding the definition of "basis" and "rate" as applied to the benefits to which the plaintiff was entitled. The plain language of the statute and the legislative intent in enacting the statute persuades us that the trial court erred in granting summary judgment to the defendant on this issue. Thus, we reverse the trial court's ruling in favor of the defendant and against the plaintiff with respect to count I of the amended complaint.

We next address whether the plaintiff was entitled to use the remaining six months of benefits attendant to the injury sustained on September 13, 2000. In count III of the amended complaint, the plaintiff alleged that he was entitled to a total of two years of the Act benefits since he suffered two separate duty-related injuries. The defendant does not dispute the fact that both injuries occurred in the line of duty and that the plaintiff was entitled to 12 months of benefits under the Act for the June 5, 2003 injury. The dispute arises over the number of months of Act benefits

to which the plaintiff is entitled. Section 1(b) provides that an eligible employee shall continue to be paid "during the time he is unable to perform his duties due to the result of the injury, but not longer than one year in relation to the same injury." 5 ILCS 345/1(b) (West 2004). The plaintiff asserts that he is entitled to an additional six months of Act benefits because he only received six months of benefits for the September 13, 2000 injury, leaving six months of the maximum one-year period for which he could have received benefits. He argues that he was entitled to "bank" those six months for later use when he became disabled at least in part as a result of aggravating the same injury.

In Albee v. City of Bloomington, 365 Ill. App. 3d 526, 849 N.E.2d 1094 (2006), a group of police officers who had been injured in the line of duty had received benefits under the Act , but returned to work before one calendar year was completed. Subsequently, each of the officers missed work because of his duty-related injuries. The officers sued when they were not paid disability benefits pursuant to the Act for the additional time that they were off for the original injury *after* the calendar year had passed. The police officers claimed that the denial of Act benefits for the period of time they were disabled due to the same injury penalized the officers for returning to work earlier than the one-year limitation on benefits given in the Act. The Albee court agreed, holding that the one-year maximum benefit period imposed under the Act was based on, not one calendar year, but one-year of *benefits.* The court held that section 1(b)'s one year limitation is on the time that the injured employee is unable to perform. Albee, 365 Ill. App. 3d at 529, 849 N.E.2d at 1097. Consequently, the Act benefits terminate after they are paid for a period of one year, not one year after the injury.

8

The plaintiff argues that for the purpose of determining such benefits, the September 13, 2000 injury is a separate injury from the June 5, 2003 injury thereby entitling him to one year of benefits for the earlier injury, of which he was only paid for six months, leaving six months unused. Further, the June 5, 2003 injury although separate, is also an aggravation to the same area of his back as the September 2000 injury. He argues that under this theory and the holding in Albee, he is entitled to receive up to two years of benefits for the two injuries.

We agree with the Albee court that an employee should not be punished for returning to work earlier than the one year limitation on the payment of full benefits. The Act was enacted to provide for the continuation of full pay for law enforcement officers, corrections officers, firefighters, and state employees who suffer disabling injuries in the line of duty. Gibbs v. Madison County Sheriff's Department, 326 Ill. App. 3d 473, 477, 760 N.E.2d 1049, 1052 (2001). We acknowledge that the facts in Albee are different in some respects than those present here. In both Albee and the instant case, injured employees returned to work prior to the expiration of section 1(b)'s one-year limitation period. The plaintiffs in Albee subsequently became unable to perform their duties due to their original injuries. Here the plaintiff subsequently became unable to perform his duties due to a second injury which aggravated his first injury. We agree with the plaintiff that it is certainly possible for an injured employee to return to work and then find that he is unable to perform his job duties. Since the limitation is on the benefit and not the calendar year, the court in Albee said that the injured employee could claim the benefits remaining in the allotted one-year benefit scope. Albee, 365 Ill. App. 3d at 529, 849 N.E.2d 1094. We find Albee dispositive of the issue in the case before us. To hold otherwise would discourage injured employees from returning to work prior to

9

the exhaustion of the entire one year of benefits. We believe that the "use-it or lose-it" result of the position advanced by the defendant is contrary to the legislative intent as evidenced by the statute's plain language. Therefore, we reverse the trial court's ruling in favor of the defendant with respect to count III of the amended complaint.

Next, the plaintiff argues that the trial court erred in denying the plaintiff's motion to reconsider in light of the settlement of the plaintiff's claim by the IIC. He argues that the trial court did not apply the proper evidentiary standard in deciding that collateral estoppel precluded the plaintiff from litigating which injury rendered the plaintiff disabled. Both of these issues arise from the trial court's ruling dismissing the plaintiff's claim for health insurance benefits under the Public Safety Employee Benefits Act (Benefits Act) (820 ILCS 320/10(a) (West 2004)). Although the plaintiff characterizes this issue as whether the proper evidentiary standard was applied, the real issue is whether the plaintiff is entitled to the continued payment of his health insurance premiums as provided by the Benefits Act. The defendant argued that the plaintiff was collaterally estopped from arguing that the September 13, 2000 injury was related to the June 5, 2003 injury because the Board found that the disabling injury occurred on June 5, 2003. The plaintiff alleged that the two injuries are related and he was therefore entitled to health insurance benefits pursuant to the Benefits Act, which provides, in pertinent part:

> "(a) An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, on or after the effective date of this Act suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the

10

employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the calendar year in which he turns 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support. \*\*\*

\* \* \*

(b) In order for the \*\*\* firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred as the result of the officer's response to fresh pursuit, the officer or firefighter's response to what is reasonably believed to be an emergency \*\*\*." 820 ILCS 320/10(a), (b) (West 2004).

In order to apply the doctrine of collateral estoppel, the issue decided in the prior adjudication must be identical to the issue in the current action, the party against whom estoppel is being asserted must have been a party in the prior action, and the prior adjudication must have resulted in a final judgment on the merits. Mabie v. Village of Schaumburg, 364 Ill. App. 3d 756, 758, 847 N.E. 2d 796, 798 (2006). On August 17, 2004, the Board held that the plaintiff suffered a line-of-duty injury to his back resulting in permanent injury to his back, rendering the plaintiff unable to perform the ordinary duties of a firefighter. The defendant argues that because of this finding, the trial court was correct in holding that the plaintiff was collaterally estopped from arguing

11

that the June 5, 2003 injury was related to the September 13, 2000 injury. The trial court held that the plaintiff could not combine the two injuries, one of which occurred when responding to an emergency but was not catastrophic (September 2000), and one of which resulted in catastrophic injury but did not occur in response to an emergency (June 2003), in order to qualify for payment of health insurance premiums under the Benefits Act.

We disagree with the trial court's finding that the plaintiff was collaterally estopped from raising the September 13, 2000 injury. The determination of whether the plaintiff was entitled to disability benefits from the Board under the Act and whether the injury was catastrophic and occurred in response to an emergency, as required for health insurance benefits pursuant to the Benefits Act, requires a different analysis.

The Illinois Pension Code (40 ILCS 5/4-110 (West 2004)) provides in pertinent part:

> "If a firefighter, as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found, pursuant to Section 4-112, to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his or her being placed on disability pension, the firefighter shall be entitled to a disability pension ***."

Section 4-112 provides in pertinent part:

> "A disability pension shall not be paid until disability has been established by the board [through] examinations of the firefighter at

> pension fund expense by 3 [three] physicians selected by the board
>
> and such other evidence as the board deems necessary." 40 ILCS 5/4-
>
> 112 (West 2004).

Contrary to the defendant's argument, a determination of whether a firefighter is eligible for pension benefits does not require the Board to determine whether the injury is "catastrophic" or whether the firefighter was responding to what is "reasonably believed to be an emergency." The determinative factors in deciding whether pension benefits will be awarded and the amount to be awarded are whether there is a disabling injury that prevents the firefighter from performing his duties and whether that disabling injury arose from his performance as a firefighter. The Board found that the plaintiff suffered from problems with his back prior to the date of injury; was unable to perform ordinary duties as a firefighter due to his back injury; as a result of being injured on June 5, 2003; he has permanent damage to his back; that the injury on June 5, 2003 was sustained while he was performing fire service duties; and therefore he was entitled to disability benefits. Thus, it cannot be said that the Board made a specific finding that the disabling injury was not related to the September 13, 2000 injury. Nor did the Board specifically find that the disabling injury was a "catastrophic injury" or in response to what is "reasonably believed to be an emergency" as the defendant argues is required for benefits under the Benefits Act, since such a finding is not required for benefits from the Board. Thus, we hold that the issue of whether the plaintiff's injury was "catastrophic" or in response to what is " reasonably believed to be an emergency" had not been litigated before the Board. Therefore, the plaintiff was not collaterally estopped from arguing that the injuries were related and that he was entitled to payment of his health insurance premiums under

13

the Benefits Act.

Our supreme court in <u>Krohe v. City of Bloomington</u>, 204 Ill. 2d 392, 395, 789 N.E.2d 1211, 1212 (2003), held that the phrase "catastrophic injury" is synonymous with an injury resulting in a line of duty disability under section 4-110 of the Illinois Pension Code. 40 ILCS 5/4-110 (West 2004). In <u>Krohe</u>, the plaintiff was a firefighter who was awarded a disability pension for injuries sustained in the line of duty. After the city denied the plaintiff's request for the continued payment of health insurance premiums for him and his family, the plaintiff filed a complaint for declaratory relief pursuant to section 10(a) of the Benefits Act (820 ILCS 320/10(a) (West 2004)). The trial court ruled in favor of the plaintiff and ordered the city to continue paying the plaintiff's health insurance premiums. The city appealed and the appellate court, with one justice dissenting, affirmed.

In <u>Krohe</u>, the court held that the term "catastrophic injury" as used in the Benefits Act is ambiguous and therefore required an examination of the Benefits Act's legislative history. An examination of the Benefits Act's legislative history revealed that the intent of the statute was to provide full-time law enforcement officers and firefighters killed or disabled in the line of duty continuation of their health insurance. These benefits were also to be extended to eligible dependents. In fact, immediately prior to the vote, the bill's sponsor, Senator Laura Kent Donahue, stated:

> "I'd like to say for the sake of the record what we mean by catastrophically injured. What it means is that it is our intent to define 'catastrophically injured' as a police officer or firefighter who, due to injuries, has been forced to take a line-of-duty disability." 90th Ill. Gen. Assem., Senate Proceedings, November 14, 1997, at 136

(statements of Sen. Donahue).

The intent of the Benefits Act was explained in the same manner in the House as well. Representative Art Tenhouse advised his colleagues as follows:

> "1347 is a simple Bill. It simply provides that full-time law enforcement officers and firefighters that are killed or disabled in the line of duty, we're going to continue the health benefits for the officer's children and spouse." 90th Ill. Gen. Assem., House Proceedings, April 14, 1997, at 180 (statements of Rep. Tenhouse).

Thus, it is clear that the legislature's intent in enacting the Benefits Act was to provide for the payment of the firefighter's and his family's health insurance premiums, where the firefighter is disabled in a line of duty injury. In the instant case, there is no doubt that the plaintiff suffered a disabling injury while in the line of duty. Therefore, the plaintiff is also entitled to the continuation of the payment of health insurance premiums for him and his family. Accordingly, we reverse the order of the trial court on this issue.

Finally, we address the trial court's dismissal of the plaintiff's claim for attorney fees. The plaintiff argues that the primary basis for the defendant's motions and the trial court's order with respect to his effort to recover fees was the erroneous assumption that the plaintiff was not entitled to any of the benefits sought. The applicable statute relating to attorney fees is section 1 of the Attorney Fees in Wage Actions Act, which states in pertinent part:

> "Whenever a[n] *** employee brings an action for wages earned *** and establishes by the decision of the court or jury that

15

*** [those wages are] justly due and owing, and that a demand was made in writing at least 3 days before the action was brought, [for those wages] *** then the court shall allow the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action." 705 ILCS 225/1 (West 2004).

As we have outlined, the plaintiff was entitled to an additional six months of benefits under section 1(b), and a recomputation of his benefits based on his pay rate as a shift commander at the time of his 2003 injury. The defendant correctly conceded during oral argument that if the plaintiff had prevailed in the trial court, he would have been entitled to attorney fees under the applicable provisions of the statute. We have found that the trial court erred in dismissing the plaintiff's complaint and in granting summary judgment to the Board. Therefore, the plaintiff is entitled to seek attorney fees as this dispute falls within the parameters of the statute and the plaintiff has prevailed.

The plaintiff also asserts that he is entitled to receive attorney fees for the restoration of his health insurance premiums. The plaintiff argues that restoration of insurance benefits can be considered a suit for "wages" as well. Illinois courts have not directly dealt with this issue. However, in a federal case in the Northern District of Illinois, Affetto v. TRW, Inc. 691 F.2d 357, 362 (7th Cir. 1982), the court, applying the Illinois Attorney Fees in Wage Actions Act (705 ILCS 225/1 (West 2004)), held that a suit to establish entitlement to retirement annuities and insurance benefits was a suit for "wages." We have already determined that the plaintiff is entitled to attorney fees as a result of his claims under the Act, but we decline to extend Affetto's holding to claims that

16

are limited to seeking only health insurance premiums, rather than seeking retirement annuities as well. Neither the record nor the briefs in the instant case provide a sufficient foundation upon which to base a reasoned decision on this issue. In light of our holding, we need not address the issue of whether the trial court erred in denying the plaintiff's motion to reconsider its ruling in light of the settlement of the plaintiff's claim by the IIC.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

QUINN, P.J., and GREIMAN, J., concur.