# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Richter v. Village of Oak Brook*, 2011 IL App (2d) 100114

---

| | |
|---|---|
| Appellate Court Caption | FRANK H. RICHTER, Plaintiff-Appellant, v. VILLAGE OF OAK BROOK, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-10-0114 |
| Filed | September 23, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action by a firefighter seeking benefits under the Public Safety Employee Benefits Act and the Public Employee Disability Act following the settlement of his workers' compensation claims for the injuries he sustained and the award of a line-of-duty disability pension, the trial court's judgment for the village where plaintiff was employed was reversed and judgment was entered for plaintiff, since the settlement of the workers' compensation claims collaterally estopped defendant from relitigating the issues of whether plaintiff's injury contributed to his disability and whether he qualified for benefits under the Acts, and the cause was remanded for proceedings on plaintiff's claim for attorney fees under the Attorneys Fees in Wage Actions Act. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 04-MR-551; the Hon. Kenneth L. Popejoy, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Anthony G. Argeros, of Anthony G. Argeros, LLC, of Chicago, for appellant.

Patricia L. Mehler, of Seyfarth Shaw LLP, of Chicago, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.

Justices McLaren and Hudson concurred in the judgment and opinion.

## OPINION

¶ 1 The plaintiff, Frank Richter, was a firefighter employed by the fire department of the defendant, the Village of Oak Brook. He sustained certain injuries and developed certain conditions related to his job, and filed several workers' compensation claims relating to those injuries and conditions. He and the defendant settled his workers' compensation claims, and the pension board awarded him a line-of-duty disability pension. The plaintiff then filed suit against the defendant to have his health insurance premiums paid under the Public Safety Employee Benefits Act (820 ILCS 320/10 (West 2002)), and for certain other benefits under the Public Employee Disability Act (5 ILCS 345/1(b) (West 2002)). The trial court entered judgment in favor of the defendant on those claims, and the plaintiff appealed. We reverse and remand.

¶ 2 BACKGROUND

¶ 3 The plaintiff began working for the defendant as a firefighter in 1985. In 1996, he began experiencing sinus problems that did not resolve within the usual time. In January 1999, he was seen at the Occupational Health Clinic of the University of Illinois at Chicago and began a series of tests relating to his sinus problems. In April 1999, air quality tests were performed at the Oak Brook fire stations that showed high diesel exhaust levels. The plaintiff experienced a reduction in his nasal symptoms when he was not at work, and the installation of a diesel exhaust air handling system at the fire station where he usually worked also reduced his symptoms when he was on the apparatus floor although not when he was in the living quarters. The symptoms included rhinitis, a thick flow of mucus and phlegm, and difficulty sleeping due to the need to clear his throat frequently. The flare-up of these symptoms when he was at work led the plaintiff to take time off from work on his doctor's orders, and he was ultimately diagnosed with diesel-induced rhinitis. The physical manifestations observed by the plaintiff's eye, nose, and throat doctor, Dr. Gregory Bussell, included redness and swelling of the larynx and swelling of the vocal cords. On January 11, 2002, the plaintiff reported to work but experienced a flare-up of his rhinitis and related symptoms and left work. When Dr. Bussell saw him on that day, he observed severe nasal

erythema and "cobblestoning" that had not been present before. Dr. Bussell believed that the plaintiff's nasal condition had become disabling and advised the plaintiff not to return to work in any environment where he would encounter airborne irritants that exacerbated his symptoms. January 11, 2002, was the plaintiff's last day of work with the Oak Brook fire department.

¶ 4     During the same time frame, the plaintiff also reported a series of injuries to his shoulders. Beginning in 1999 he reported problems with his neck and middle and lower back, but none with his shoulders. On January 4, 2000, the plaintiff was participating in a response to a fire in Elmhurst when he felt pain in both shoulders as he struggled to control a highly pressurized 2½-inch water hose. Later while fighting the same fire he felt a sharp, dagger-like pain in his shoulders as he used a "pike pole" to pierce and remove pieces of a ceiling in the structure. He stopped participating in the fire suppression at that point. He reported the injury at work on January 9, 2000, and saw a doctor for the injury on the following day. He began treatment including a home exercise program and cortisone injections. During this time he continued to work full-time, although during his frequent doctor visits he reported continuing difficulty lifting objects overhead. After he again experienced a sharp pain in his shoulders in June 2000 while pulling on an equipment drawer at work, he began a course of formal physical therapy and received more injections. In October 2000, shortly after completing the course of physical therapy, the plaintiff reported that he had strained his shoulders and back while lifting a box.

¶ 5     The plaintiff injured his shoulders again on November 12, 2000, during a training exercise in which a fellow firefighter fell backwards with him while attempting to remove a simulated victim from a building through a window. He filled out an accident report for the fall and went to the hospital. The next day he saw his doctor again, who told him to stay home for one week and then resume physical therapy and full duty. The plaintiff continued to report pain in his shoulders and MRIs were taken. The plaintiff had surgery on his right shoulder on February 15, 2001, and remained off work for postoperative rehabilitation and physical therapy. He continued to feel pain in his shoulders and was scheduled for more surgery. He had a second surgery on his right shoulder on December 6, 2001. On December 20, 2001, the plaintiff returned to light duty work, with restrictions of no overhead lifting, no pulling of more than 10 pounds, and no repetitive use of machinery. On January 10, 2002, he experienced knee pain while kneeling at work and went to the hospital. He returned to light duty the following day but left for the hospital again due to a flare-up of his rhinitis and related symptoms; this was his last day of work for the fire department. He had surgery on his left shoulder on April 24, 2002, and again began postoperative rehabilitation and physical therapy. On October 3, 2002, he was advised that he had reached maximum medical improvement in his left shoulder, and that he would have permanent work restrictions that would make returning to work as a full-time firefighter unlikely.

¶ 6     The plaintiff filed for workers' compensation benefits with respect to the shoulder injury he sustained on January 4, 2000, other problems with his neck and back, and his diesel-induced rhinitis. On April 4, 2003, an arbitrator found that he was temporarily totally disabled by his diesel-induced rhinitis, which was a work-related condition. The defendant appealed this decision, and on December 23, 2003, the Industrial Commission (Commission)

affirmed the finding of temporary total disability due to work-related diesel-induced rhinitis during the periods of November 25, 2001, through December 5, 2001; January 22, 2002, through April 14, 2002; and June 27, 2002, through November 17, 2002. (He had received temporary total disability payments on account of his other injuries at other times, but had not received any such payments during the specified periods, during which, the Commission found, he was temporarily totally disabled due to his rhinitis.) The plaintiff also applied for a line-of-duty disability pension. The pension board granted him the line-of-duty pension effective September 23, 2003. The parties later stipulated to the trial court that this pension was 65% of the plaintiff's prior salary and was "based on his shoulder injuries."

¶ 7        On February 9, 2004, the Commission entered an order memorializing the settlement agreement reached by the parties regarding the plaintiff's various workers' compensation claims. The order contained the following relevant provisions:

> "To resolve this dispute regarding the benefits due the petitioner under the Illinois Workers' Compensation or Occupational Diseases Act, we offer the following statements. We understand these statements are not binding if this contract is not approved.
>
> * * *
>
> Date of accident: 1/3/99; 4/21/99; 4/22/99; 1/4/00; 1/10/02
>
> How did the accident occur? Diesel exposure in fire station; various injuries to neck, back, shoulder and knees.
>
> What part of the body was affected? Man as a whole; neck, back and shoulders; neck and shoulders; right and left knees, shoulder and back.
>
> What is the nature of the injury? Diesel exposure; disc bulges C5-C7 and T2-T3, cervical and lumbar strain, thoracic outlet syndrome, disc bulge at L4-L5 sciatica, right and left shoulder surgeries, including but not limited to rotator cuff tear with distal clavicle excision and subacromial decompression and bicipital tendinitis.
>
> * * *
>
> Temporary Total Disability Benefits: Compensation was paid for approximately 85 weeks at the rate of $843.47/week. The employee was temporarily totally disabled intermittently from 1/30/1999 through present.
>
> * * *
>
> An arbitrator or commissioner of the Commission previously made an award on this case on *** 12/23/2003 [regarding] TTD 14-5/7 Permanent disability none Medical expenses none Other none
>
> Terms of Settlement: ***
>
> Respondent agrees to pay and Petitioner agrees to accept the lump sum of $105,060.16 in full and final settlement of all claims for injuries and aggravations thereof, pursuant to the Illinois Workers' Compensation Act 820 ILCS 305 and/or Illinois Occupational Disease [*sic*] Act 820 ILCS 310, resulting from Petitioner's accidental injuries or occupational diseases occurring during his employment with Respondent, including but not limited to 01/03/99; 4/21/99; 4/22/99; 1/4/00; 1/10/02.

The settlement represents a compromise intended to extinguish Respondent's legal obligations for all known or unknown claims for which petitioner might seek recovery pursuant to the Illinois Workers' Compensation Act 820 ILCS 305 and/or Illinois Occupational Disease [*sic*] Act 820 ILCS 310. Petitioner specifically waives all rights to review this agreement or request additional compensation pursuant to 820 ILCS 19(h). The settlement represents approximately 40% man as a whole and any and all disputes for temporary total disability and unpaid medical bills."

¶ 8      On May 17, 2004, the plaintiff filed a complaint for declaratory judgment, asserting four claims. In count I, he asked the court to rule that the defendant was required under the Public Safety Employee Benefits Act (PSEBA) (820 ILCS 320/10 *et seq.* (West 2002)) to pay the health insurance premiums for himself and his family. In count III, he asked for a similar declaration that under the Public Employee Disability Act (PEDA) (5 ILCS 345/1 *et seq.* (West 2002)) he was entitled to payments for certain periods of temporary total disability related to his diesel-induced rhinitis. In counts II and IV he sought attorney fees under the Attorneys Fees in Wage Actions Act (705 ILCS 225/1 (West 2002)) for the cost of establishing his rights under counts I and III.

¶ 9      The defendant filed an answer containing, *inter alia*, the following statements:

"[COMPLAINT] PARAGRAPH NO. 6:

As a proximate result of the aforesaid shoulder injuries sustained on January 4, 2000, the plaintiff *** became, and was, disabled from continuing to perform his duties as a full-time firefighter employed by defendant ***.

ANSWER:

Defendant admits that Plaintiff and medical professionals have indicated that Plaintiff was and is disabled from performing his duties as a full-time firefighter and that the shoulder injuries which Plaintiff has alleged resulted from injuries sustained on January 4, 2000 could have been a partial or the entire cause of the disability but denies the remaining allegations of paragraph six.

                              * * *

[COMPLAINT] PARAGRAPH NO. 17:

By reason of the foregoing facts and circumstances, the plaintiff *** has sustained a 'catastrophic injury' as that phrase is contemplated within the 'Public Safety Employee Disability Act,' 820 ILCS 320/10(a).

ANSWER:

Defendant admits that to the extent Plaintiff suffered a disabling injury preventing him from performing his firefighter duties as alleged in paragraphs four through ten of Count I, Plaintiff's injury could qualify as a catastrophic injury under Illinois case law involving the Public Safety Employee Disability Act, 820 ILCS 320/1 *et seq.*, however, Defendant denies the remaining allegations of paragraph seventeen.

                              * * *

[COMPLAINT] PARAGRAPH NO. 20:

The aforesaid Settlement Contract Lump Sum Petition and Order of the Illinois

Industrial Commission is a final adjudication of the issues of whether the plaintiff *** sustained injuries to his bilateral shoulders in the line-of-duty on January 4, 2000, and whether such injuries are a proximate cause of his present state of disability from duty as a firefighter employed by defendant ***.

ANSWER:

Defendant admits the allegations of paragraph twenty to the extent of final adjudication on his workers' compensation claims but denies the remaining allegations of paragraph twenty."

¶ 10    In November 2004, the plaintiff filed a motion for summary judgment in his favor, seeking to apply the doctrine of *res judicata*. The plaintiff argued that, given the defendant's answer to his complaint and the findings contained in the Commission's February 2004 settlement order and the pension board's September 2003 decision,[1] his right to benefits under PSEBA (sought in count I) had been established. He also argued that the Commission's December 2003 decision awarding temporary total disability benefits for certain specified periods was *res judicata* as to his right to those benefits under PEDA (the subject of his claim in count III). In May 2005, Judge Edward Duncan denied the motion for summary judgment. The court's order stated:

"Plaintiff's Motion for Summary Judgment is denied because

(1) *Res judicata* does not apply offensively under current case law;

(2) No identity of issues exists in this matter; and

(3) Use of collateral estoppel must be with clarity and not under terms where it would be unfair under Ill[inois] Supreme Court case law."

¶ 11    Although it disputed the plaintiff's right to health insurance benefits under PSEBA, the defendant continued paying the premiums for the plaintiff and his family through July 2008. At that point, the defendant threatened to cease paying the premiums. The plaintiff filed an emergency motion for a temporary restraining order, which was granted by the trial court (Judge Kenneth Popejoy presiding on that date and on all later court dates). Thereafter, the plaintiff also filed a motion to reconsider the earlier denial of his motion for summary judgment, citing recent case law applying the doctrines of *res judicata* and collateral estoppel to give final workers' compensation orders preclusive effect in later PSEBA and PEDA claims. In October 2008, after briefing and a hearing, the trial court denied the motion to reconsider and vacated the temporary restraining order. The defendant stopped paying the health insurance premiums and filed an amended answer and a counterclaim seeking reimbursement for the premiums it had already paid.

¶ 12    A bench trial was held in July 2009. On September 4, 2009, the trial court issued a letter of opinion finding in favor of the defendant on all of the plaintiff's claims as well as on the defendant's counterclaim. After the trial court denied the plaintiff's posttrial motion, he filed

---

[1]Although the plaintiff's motion for summary judgment cited to the pension board's decision, he failed to attach to his motion a copy of that decision. His later attempts to supplement the record with the decision were unsuccessful.

this appeal.

¶ 13                                ANALYSIS

¶ 14        On appeal, the plaintiff contends that under the principle of collateral estoppel he has the right to judgment as a matter of law on counts I and III of his complaint. Alternatively, he argues that the trial court's judgment in favor of the defendant on counts I and III was against the manifest weight of the evidence. Finally, he argues that he has a right to attorney fees incurred in connection with those claims, as asserted in counts II and IV. We begin with his arguments that he is entitled to judgment as a matter of law. We review *de novo* the trial court's determination that the doctrine of collateral estoppel does not apply to the plaintiff's claims. *Illinois Health Maintenance Organization Guaranty Ass'n v. Department of Insurance*, 372 Ill. App. 3d 24, 31 n.3 (2007).

¶ 15                              The PSEBA Claim

¶ 16        The purpose of PSEBA is to ensure the health benefits of public safety employees who have suffered career-ending injuries. *Nowak v. City of Country Club Hills*, 406 Ill. App. 3d 837, 840 (2010), *appeal allowed*, No. 111838 (Mar. 30, 2011) (table). Under PSEBA, a firefighter and his or her family are entitled to the specified health benefits if: (1) under section 10(a), the firefighter suffered a "catastrophic injury" or was killed in the line of duty; and (2) under section 10(b), the injury or death resulted from any of a listed set of situations including the firefighter's "response to what is reasonably believed to be an emergency." 820 ILCS 320/10(b) (West 2002). After reviewing the legislative history of PSEBA, our supreme court held that the term "catastrophic injury" was "synonymous with an injury resulting in a line-of-duty disability" under the Illinois Pension Code (40 ILCS 5/4-110 (West 2000)). *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 400 (2003). Here, although the pension board's decision is not part of the record, the parties stipulated that the pension board granted the plaintiff a line-of-duty pension "based on his shoulder injuries." Under *Krohe*, the pension board's decision establishes that the plaintiff suffered a catastrophic injury, thus meeting the requirements of section 10(a) of PSEBA. This is not an application of collateral estoppel. Rather, because the legislature intended an injured firefighter or police officer to be eligible for benefits under section 10(a) of PSEBA whenever his or her injuries were sufficient to qualify for a line-of-duty pension, the pension board's determination in this regard establishes as a matter of law that the firefighter or police officer received a catastrophic injury. *Krohe*, 204 Ill. 2d at 400. We therefore turn to the question of whether the plaintiff has established, through the operation of collateral estoppel or otherwise, that his injury resulted from a response to an emergency under section 10(b).

¶ 17        The plaintiff contends that the February 2004 settlement contract and order entered by the Commission conclusively established that the January 4, 2000, shoulder injury (which the defendant concedes was sustained during a response to an emergency) was a proximate cause of his eventual disability. Although the plaintiff refers to the doctrine of *res judicata* in his brief, it is clear that in reality the substance of his argument seeks to apply the doctrine of collateral estoppel. Collateral estoppel is a branch of *res judicata* that prohibits the

relitigation of an issue actually decided in an earlier proceeding between the same parties. *Mabie v. Village of Schaumburg*, 364 Ill. App. 3d 756, 758 (2006). "In order to apply collateral estoppel, (1) the issue decided in the prior adjudication must be identical to the issue in the current action; (2) the party against whom estoppel is asserted must have been a party or in privity with a party in the prior action; and (3) the prior adjudication must have resulted in a final judgment on the merits." *Id.*

¶ 18        There is no dispute that the second element, identity of the parties, is met here: the defendant in this action was also a party to the workers' compensation case. The defendant argues that the third element, a final judgment on the merits, is not present, because the Commission's order entering the parties' settlement contract "was not, by definition, a judgment on the merits." However, the defendant fails to offer any legal authority to support this argument, while there is substantial authority to the contrary. See *Stromberg Motor Device Co. v. Industrial Comm'n*, 305 Ill. 619, 622 (1922) (a settlement or award entered by the Commission is a final adjudication of all matters in dispute up to the time of the agreement); see also *Industrial Comm'n v. McCartin*, 330 U.S. 622, 628-29 (1947) (when a settlement is approved by the Commission, it becomes *res judicata* as to matters adjudicated and agreed upon therein; applying Illinois law). We also note that the defendant itself admitted that the Commission's order was "a final adjudication on [the plaintiff's] workers' compensation claims."

¶ 19        To the extent that the defendant concedes that the Commission's order was final but argues that it was not an adjudication "on the merits," we must reject this contention as well. A judgment is on the merits in the sense that it may be used to preclude relitigation of an issue in a subsequent action when the judgment "amounts to a decision as to the respective rights and liabilities of parties based on the ultimate facts or the state of the facts disclosed by pleadings or evidence, or both, and on which the right of recovery depends." *Fried v. Polk Brothers*, 190 Ill. App. 3d 871, 878 (1989). The Commission's February 2004 order set the parties' rights and liabilities based upon agreed facts stated in the order, and it thus qualified as a judgment on the merits. That the order rested on the parties' agreement rather than an independent determination of the facts and issues is of no legal significance in analyzing whether it was "on the merits": a settlement order entered by the Commission has the same preclusive effect as an award based on the Commission's own fact-finding. *Kinn v. Prairie Farms/Muller Pinehurst*, 368 Ill. App. 3d 728, 730 (2006). Thus, we reject the defendant's argument that the Commission's February 2004 order was not a final adjudication on the merits.

¶ 20        The defendant next argues that collateral estoppel may not be applied here because the issues raised in the Commission's order are not identical to the issues raised by the plaintiff's claim for benefits under PSEBA. Specifically, the defendant argues that the Commission's order did not include any finding that an injury resulting from an emergency response was the proximate cause of the plaintiff's disability. The defendant acknowledges that the plaintiff suffered an injury to his shoulders on January 4, 2000, and it also acknowledges that the injury occurred when the plaintiff was engaged in responding to an emergency, *i.e.*, a residential fire. However, it argues that the shoulder injury the plaintiff sustained on January 4, 2000, was not the cause of the plaintiff's ultimate inability to continue working as a

firefighter, because the plaintiff returned to work after receiving that injury. The plaintiff did not take substantial time off related to his shoulder condition until after he re-injured his shoulders during the November 2000 training exercise. The defendant argues that the November 2000 shoulder injury was the disabling event, that the training exercise was not an emergency, and that therefore the plaintiff's disabling injury did not result from his response to an emergency.

¶ 21　　This argument rests on the defendant's assertion that in order to recover under the PSEBA the plaintiff must prove that the injury he received during an emergency response (*i.e.*, the one he received in January 2000) was the sole cause of his disability, not simply a contributing cause. In support of this assertion the defendant cites to *Smith v. Armor Plus Co.*, 248 Ill. App. 3d 831 (1993). However, as we noted in that very case, "[a]n injury may have more than one proximate cause." *Id.* at 840. Illinois law defines a proximate cause as:

> "a cause that, in the natural or ordinary course of events, produced the plaintiff's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury." Illinois Pattern Jury Instructions, Civil, No. 15.01 (2011).

Thus, the plaintiff can recover under the PSEBA so long as the injury he sustained in January 2000 during an emergency response was a contributing cause of his disability, even if it was not the sole cause of that disability.

¶ 22　　This point was illustrated in *Bahr v. Bartlett Fire Protection District*, 383 Ill. App. 3d 68 (2008). In that case, the plaintiff, Bahr, was injured during his responses to two emergencies that occurred on September 10 and September 13, 2000. He was diagnosed with back injuries and underwent back surgery, with the result that he was off work for approximately 18 months. He then returned to work. About two years later in June 2003, Bahr again injured his back while removing an oxygen tank from an ambulance (during a nonemergency). He sought line-of-duty pension benefits, and also filed a separate lawsuit seeking, *inter alia*, benefits under PSEBA. The trial court dismissed Bahr's PSEBA claim because the pension board listed only the June 2003 nonemergency-related injury in finding that Bahr qualified for a line-of-duty pension. The appellate court reversed, holding that the pension board had made no finding with respect to whether the September 2000 emergency-related injuries were a contributing cause of Bahr's eventual disability; in the event that Bahr could show this, he could recover under PSEBA. *Id.* at 77. There was no suggestion that Bahr's return to work in between his initial injuries and the injury that permanently disabled him meant that his earlier injuries were not a contributing cause of his disability.

¶ 23　　Similarly, in *Phalin v. McHenry County Sheriff's Department*, 381 Ill. App. 3d 185 (2008), the defendant raised the argument that, because only two of the plaintiff's four injuries arose from a response to an emergency, and the last injury before the plaintiff became disabled was not emergency-related, the plaintiff did not qualify for PSEBA benefits. *Id.* at 188. This court rejected that argument, noting that PSEBA requires only that the plaintiff suffer "a catastrophic injury" as a result of responding to an emergency. *Id.* The implication of this holding is that, as long as an emergency-related injury contributes to the eventual disability that qualifies as a "catastrophic injury," the plaintiff meets the

requirements of PSEBA.

¶ 24 In the present case the defendant has stipulated that the pension board's grant of a line-of-duty pension to the plaintiff was "based on his shoulder injuries." Additionally, the Commission's order collaterally estops the defendant from relitigating the issue of whether the plaintiff's January 4, 2000, shoulder injury was a contributing cause of the plaintiff's disability. The order twice lists January 4, 2000, as one of the dates on which the plaintiff sustained a work-related injury and repeatedly states that the plaintiff's shoulders were among the parts of the body affected by the listed injuries. These statements necessarily establish that the January 2000 injury was among the causes of the disability that was the subject of the order. See *Thurow v. Police Pension Board*, 180 Ill. App. 3d 683, 688 (1989) (workers' compensation settlement order is conclusive finding regarding cause of the injury and that issue may not be relitigated later). The order stated that the parties understood that the statements contained in it would not be binding if the contract were not approved–an implicit acknowledgment that the statements *would* be binding if the contract was approved and entered. Although it is possible for a settlement contract to include an express disclaimer of liability on the part of the defendant and such a provision may under some circumstances prevent the application of collateral estoppel (see *Pientka v. Board of Fire Commissioners*, 125 Ill. App. 3d 124, 129 (1984)), no such language was included here. "A settlement contract approved by the Commission has the same legal effect as a Commission award, and an approved settlement becomes final after 20 days if neither party seeks review." *Kinn*, 368 Ill. App. 3d at 730. The defendant did not seek review of the Commission's order entering the settlement contract and thus it became *res judicata* and the issue of the cause of the plaintiff's injury could not be relitigated. *J&R Carrozza Plumbing Co. v. Industrial Comm'n*, 307 Ill. App. 3d 220, 225 (1999); *Thurow*, 180 Ill. App. 3d at 688.

¶ 25 The defendant also contends that, even if the threshold requirements for collateral estoppel are present here, a court should not apply the doctrine where it would be unfair to do so. *People v. Pawlaczyk*, 189 Ill. 2d 177, 189 (2000). Collateral estoppel is an equitable doctrine, and a court must balance the harm of giving a previously unsuccessful party a second bite at the apple and the need for judicial economy against the right to a fair adversary proceeding in which both parties have the opportunity to fully present their cases. *Talarico v. Dunlap*, 177 Ill. 2d 185, 192 (1997). A court's determination not to apply collateral estoppel because of unfairness typically rests either on some inadequacy in the forum in which the matter was first determined (*Herzog v. Lexington Township*, 167 Ill. 2d 288, 296 (1995)), or on the view that the party to be estopped did not previously have a full and fair opportunity to litigate the issue, perhaps because the party had no motivation to vigorously litigate the issue in the earlier case (*Talarico*, 177 Ill. 2d at 192).

¶ 26 In this case neither of these factors is present. Although proceedings before the Industrial Commission differ somewhat from those in the circuit court, the fundamentals of due process were certainly met in the workers' compensation case: the parties were represented by counsel and had the opportunity to present evidence and to appeal determinations that they believed were incorrect. We observe that the preclusive effect of workers' compensation judgments has been recognized for over 90 years (see *Stromberg Motor Device Co.*, 305 Ill. at 622), confirming the procedural adequacy of proceedings before the Commission. We

likewise reject the defendant's argument that it was not motivated to vigorously litigate during the workers' compensation case the issue of whether the January 2000 injury was a contributing cause of the plaintiff's ultimate disability. The supreme court has noted that "[i]ncentive to litigate might be absent *** where the amount at stake in the first litigation was insignificant, or if the future litigation was not foreseeable." *Talarico*, 177 Ill. 2d at 192. In this case, by contrast, the plaintiff had filed five workers' compensation claims and the amount of the ultimate settlement was over $100,000, not an insignificant amount. As for the likelihood of future litigation, at the time the parties entered into the settlement contract the pension board had already awarded the plaintiff a line-of-duty pension, and the defendant already knew that the plaintiff's January 2000 injury was sustained during an emergency response that could be a basis for liability under PSEBA. If the defendant did not believe that the plaintiff's January 2000 injury was among the causes of his eventual disability, it could have refused to include the claim for that injury among the claims it settled, or it could have challenged the Commission's order within the 20-day period. As it did neither, it cannot now relitigate the issue. *Stromberg Motor Device Co.*, 305 Ill. at 622 (once a workers' compensation judgment has been entered, "[i]t is not proper *** to go again into the facts regarding the injury and the disability which ensued, as those matters have been finally determined"); *Mabie*, 364 Ill. App. 3d at 758.

¶ 27    The trial court's rationale for its denial of summary judgment in the plaintiff's favor does not offer any compelling reason to depart from this conclusion. According to its written order, the trial court denied the plaintiff's motion for summary judgment on the bases that there was no identity of issues, that it would be unfair to apply the doctrine in this case, and that "*res judicata* does not apply offensively under current case law." The first basis is incorrect, as we have found that the sole issue to which collateral estoppel applies is the issue of whether the plaintiff's January 2000 injury was a cause of his disability, and that question was among those resolved by the Commission's entry of the settlement contract. We have likewise addressed the issue of fairness. The remaining basis–that the plaintiff could not use *res judicata* offensively (*i.e.*, to prevent the defendant from being able to raise a defense against the plaintiff's claims)–is also incorrect. Our supreme court has long held that *res judicata* and collateral estoppel may be raised by either party in subsequent litigation. See *In re Owens*, 125 Ill. 2d 390, 397 (1988). Although the supreme court has cautioned that the offensive use of collateral estoppel should be scrutinized carefully when the plaintiff who seeks to preclude relitigation of the issue is not bound by the earlier judgment, that concern is not present here. See *Illinois Health Maintenance Organization Guaranty Ass'n*, 372 Ill. App. 3d at 47-48 (discussing the fairness concerns relating to the application of nonmutual offensive collateral estoppel; holding that these concerns do not arise when the same parties were involved in the earlier case). Accordingly, we reverse the trial court's judgment and find that the plaintiff is entitled to judgment in his favor on count I. Because the trial court's entry of judgment for the defendant on its counterclaim rested on the disposition of count I, we reverse the judgment on the counterclaim as well.

¶ 28                                    The PEDA Claim

¶ 29    Section 1(b) of PEDA provides that a public employee such as a firefighter who is

-11-

injured in the line of duty is entitled to collect his or her full salary during the period that he or she cannot perform his or her duties, for up to one year:

> "Whenever an eligible employee suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by [his employer] on the same basis as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or vacation, or service credits in a public employee pension fund during the time he is unable to perform his duties due to the result of the injury, but not longer than one year in relation to the same injury." 5 ILCS 345/1(b) (West 2002).

In count III of his complaint the plaintiff alleged that, beginning on April 21, 1999, he was periodically unable to perform his duties due to diesel-induced rhinitis, a condition that he acquired in the line of duty. He sought pay for benefits he asserted he was entitled to under PEDA for three such periods of disability: November 25 through December 5, 2001; January 22 through April 14, 2002; and June 27, 2002, and thereafter.

¶ 30     Previously, the plaintiff had filed a workers' compensation claim for diesel-induced rhinitis, dated April 21, 1999. On April 4, 2003, following the presentation of evidence including expert evidence, an arbitrator issued a decision finding that the plaintiff was temporarily totally disabled by the work-related condition of diesel-induced rhinitis during the first two periods identified above and from June 27 through November 17, 2002 (a total of 34 weeks and 1 day). The defendant appealed the arbitrator's decision to the Commission. On December 22, 2003, the Commission issued an order confirming the arbitrator's finding of work-related temporary total disability due to the rhinitis, but finding the claim to be governed by the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq*. (West 2002)) rather than the Workers' Compensation Act (820 ILCS 305/1 *et seq*. (West 2002)). The Commission also found that the plaintiff reached maximum medical improvement on July 5, 2002, and that his disability became permanent on that date. It therefore modified the periods of temporary total disability to include the first two periods identified above and the period from June 27 through July 5, 2002 (a total of 14 weeks and 5 days). The Commission remanded the matter to the arbitrator for any further proceedings necessary to resolve the plaintiff's remaining claims. Neither party sought review of the Commission's decision in the circuit court.

¶ 31     On February 9, 2004, after the time had passed for any appeal of the Commission's December 22, 2003, order, the Commission entered the settlement contract and order resolving all of the plaintiff's workers' compensation claims. The February 2004 order identified April 21, 1999, as one of the "dates of accident" encompassed by the order, listed "diesel exposure" among the descriptions of the plaintiff's injuries, and stated that one of the ways in which the listed accidents occurred was through "diesel exposure in fire station." In the response to the question "What part of the body was affected?" the order listed the neck, back, shoulder, and knees, and also "man as a whole." The order noted that on December 22, 2003, the Commission had made an award relating to temporary total disability, and stated that the lump-sum settlement amount represented "approximately 40% man as a whole and any and all disputes for temporary total disability and unpaid medical bills."

¶ 32    On appeal, the plaintiff argues that the Commission's December 2003 order relating to temporary total disability precludes the defendant from relitigating the issue of whether he qualified for PEDA benefits during the periods listed in that order. In that order, the Commission found that the plaintiff's condition of diesel-induced rhinitis was work-related and that he was temporarily totally disabled during the periods of November 25 through December 5, 2001, January 22 through April 14, 2002, and June 27 through July 5, 2002. The plaintiff argues that, by operation of collateral estoppel, he has therefore established the two elements of a PEDA claim: (1) that he was injured in the line of duty, and (2) that he was unable to perform his duties as a result of the injury.

¶ 33    The defendant raises the same arguments with respect to collateral estoppel that we have already disposed of. In addition, it argues that, even if the Commission's December 2003 order did establish the two elements of a PEDA claim, that order was superseded by the Commission's February 2004 order entering the parties' settlement agreement. The defendant asserts that the later order did not include findings that would entitle the plaintiff to judgment on his PEDA claim and, thus, the plaintiff cannot establish his claim through collateral estoppel.

¶ 34    In support, the defendant cites *Department of Transportation v. Grawe*, 113 Ill. App. 3d 336 (1983). There, the plaintiff, Grawe, suffered a heart attack and filed a workers' compensation claim. The arbitrator determined that Grawe was permanently disabled. The employer petitioned the Commission for review. While the review petition was pending, the parties settled the claim. The settlement order did not contain any finding of permanent disability or any other equivalent statement. About the same time, Grawe underwent open heart surgery. It was successful, and he sought to return to employment with the employer. The employer argued that the arbitrator's finding of permanent disability barred Grawe from seeking further employment. The court rejected this argument on the ground that the settlement order, which contained no finding of permanent disability, superseded the arbitrator's decision. *Id.* at 344. Thus, Grawe was not estopped from seeking reemployment.

¶ 35    We find *Grawe* distinguishable on two grounds. First, in that case the parties settled the workers' compensation claim after a petition for review of the arbitrator's decision had been filed, but before that review was concluded. Thus, the arbitrator's decision was not a final decision entitled to preclusive effect when the settlement order was entered. By contrast, in this case the Commission reviewed and affirmed the arbitrator's decision, and no appeal was taken from that review. The settlement order in this case was not entered until after the Commission's December 2003 order had become final. At that point, the December 2003 order was conclusive as to the factual determinations contained in it. See 820 ILCS 310/19(f) (West 2002) (the decision of the Commission after reviewing an arbitrator's decision is conclusive unless further review is sought within 20 days); *R.D. Masonry, Inc. v. Industrial Comm'n*, 215 Ill. 2d 397, 408 (2005) (each section 19(b) decision is a separate and appealable order). Thus, we have far less basis for holding, as *Grawe* did, that the subsequent settlement nullified the Commission's factual finding. (We also note that *Grawe* failed to cite any legal support for this conclusion.)

¶ 36    Second, in contrast to the settlement contract in *Grawe*, which included no findings relating to the relevant issue there (permanent disability), the settlement contract here

-13-

specifically referred to the Commission's December 2003 order and acknowledged that temporary total disability issues were determined in that order. The order also stated that the settlement contract was intended to encompass "approximately 40% man as a whole and any and all disputes for temporary total disability and unpaid medical bills." In light of these direct references to the Commission's December 2003 order and temporary total disability, we find that the February 2004 settlement contract incorporated the Commission's earlier order rather than vacating or overriding it. As the factual determinations in the December 2003 order were incorporated into the Commission's final order entering the settlement contract, those determinations may be applied to the plaintiff's present claim for PEDA benefits under the doctrine of collateral estoppel.

¶ 37      Accordingly, the plaintiff has established the two elements of a PEDA claim. First, he has shown that he was injured in the line of duty. See *Mabie*, 364 Ill. App. 3d at 761 (there is no meaningful difference between the "line of duty" standard in PEDA and the requirement for workers' compensation claims that the condition arose during the course of employment). Second, the Commission's finding that the plaintiff was temporarily totally disabled during the periods in question establishes that he was unable to perform his duties during those periods. *Stromberg Motor Device Co.*, 305 Ill. at 622. We reverse the trial court's judgment in favor of the defendant on count III and instead grant judgment in favor of the plaintiff, finding that he has established his rights to PEDA benefits for the periods stated in the Commission's December 2003 order.[2]

¶ 38                                          Remaining Arguments

¶ 39      As we have held that the defendant was collaterally estopped from relitigating the findings contained in the Commission's December 2003 and February 2004 orders, and the plaintiff was therefore entitled to judgment as a matter of law on his claims in counts I and III, we need not address the plaintiff's other arguments relating to the correctness of the trial court's determinations concerning those counts. Further, as to the claims for attorney fees contained in counts II and IV, the defendant has conceded (by failing to offer any argument to the contrary) that those claims must be reinstated if the judgments in its favor on counts I and III are reversed. We must therefore reverse the entry of judgment in the defendant's favor on counts II and IV and remand them to the trial court for further proceedings.

¶ 40                                              CONCLUSION

¶ 41      The judgment of the circuit court of Du Page County is reversed. Judgment is entered in favor of the plaintiff on counts I and III of his complaint, and on the claim contained in the defendant's countercomplaint. The cause is remanded for further proceedings on counts II

---

[2]In his complaint, the plaintiff sought PEDA benefits for the first two periods identified in the Commission's December 2003 order and a third period that differed slightly from the third period identified in that order, *i.e.*, "June 27, 2002, and thereafter" in the complaint versus June 27 through July 5, 2002, in the order. On appeal, we understand his argument to be that collateral estoppel entitles him to judgment on his PEDA claim as to the periods identified in the December 2003 order.

and IV consistent with this decision.

¶ 42        Reversed and remanded.