# Illinois Official Reports

## Appellate Court

---

### *Hancock v. Village of Itasca*, 2016 IL App (2d) 150677

---

| | |
|---|---|
| Appellate Court Caption | DAVID E. HANCOCK, Plaintiff-Appellant, v. THE VILLAGE OF ITASCA, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-15-0677 |
| Filed | May 2, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-CH-1987; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas S. Radja, Jr., of Collins & Radja, of Naperville, for appellant.<br><br>Matthew J. Hafeli and Charles E. Hervas, both of Hervas, Condon & Bersani, P.C., of Itasca, for appellee. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Burke concurred in the judgment and opinion. |

¶ 1        On June 27, 2013, plaintiff, David E. Hancock, a former police officer employed by the Village of Itasca (Village), filed a two-count complaint in the circuit court of Du Page County against the Village. In count I, plaintiff sought a declaratory judgment that, because he suffered a catastrophic injury, the Village was obligated, pursuant to section 10(a) of the Public Safety Employee Benefits Act (Act) (820 ILCS 320/10(a) (West 2014)), to pay the entire premium for his coverage under the Village's health-insurance plan. In count II, plaintiff sought an order of *mandamus* compelling the Village to pay the premium. The trial court entered summary judgment for the Village on the basis that plaintiff suffered his injury before the effective date of the Act. We affirm because, regardless of whether the Act would otherwise apply, plaintiff's action was barred by the applicable statute of limitations.

¶ 2        The following facts, drawn from plaintiff's complaint, are not in dispute. On April 10, 1992, while employed by the Village as a police officer, plaintiff was involved in an exchange of gunfire with a bank robbery suspect and was struck in the right hand by shotgun ammunition. Plaintiff suffered fractured bones in his right hand. He returned to full duty on May 23, 1994. On January 22, 2000, plaintiff was involved in an on-duty motor-vehicle accident. Several days after the accident, plaintiff was examined by Dr. Daniel J. Nagle, who diagnosed a contusion to plaintiff's right hand. Plaintiff was released for full duty. While on duty on November 4, 2000, plaintiff became involved in the pursuit of a motorist who drove off when plaintiff attempted to conduct a traffic stop. The motorist pulled into an apartment complex and fled his vehicle. Plaintiff attempted to draw his firearm, but had difficulty maintaining his grip and nearly dropped it. Dr. Nagle evaluated plaintiff on November 7, 2000, and found him unfit to return to duty. On June 13, 2001, the Itasca Police Officers' Pension Board (Board) found that, as a result of the April 10, 1992, shooting, plaintiff was disabled for service in the police department and was entitled to a line-of-duty disability pension.

¶ 3        As an exhibit to his complaint, plaintiff attached the Board's written decision awarding him a line-of-duty pension. The Board's decision included the following excerpt from a medical report by Dr. Nagle dated November 8, 2000:

> "The patient has persevered with his activities as a police officer since 1993 in spite of his injury. While the patient has persevered over these years; [*sic*] he has rarely been put in a position where he might have to use deadly force and it would appear that his ability to respond adequately in those situations is significantly compromised by his hand at this time. The patient states that this is in fact the first time in seven years that he has had to react quickly and draw his gun under duress. This demonstrates clearly, that in those situations, his hand is not able to perform at a level necessary to protect himself. This had not been evident prior to this time. When we released Officer Hancock to return to full duty it was out of the hope that he would be able to perform all of his duties. He in fact was able to perform those duties well. However, the use of deadly force was not tested until November of this year."

¶ 4        On December 18, 2000, the attorney representing plaintiff at the time contacted the Village and requested that the Village pay the premiums for plaintiff's health insurance pursuant to the Act. The Village's attorney responded on January 2, 2001, that, because plaintiff was injured before the Act took effect, he was not entitled to benefits under the Act.

On July 30, 2003, the same attorney made a second request, on plaintiff's behalf, for benefits under the Act. The Village did not respond to the request.

¶ 5 The Village moved for summary judgment on the bases that (1) plaintiff's action was barred by the five-year statute of limitations and (2) plaintiff was ineligible for benefits because he was injured before the Act took effect. The trial court expressly found that the action was timely. However, the court agreed with the Village that, because the Act was not in effect when plaintiff was injured, the Village was not obligated to provide benefits.

¶ 6 Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). The trial court's ruling on a motion for summary judgment is subject to *de novo* review. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004).

¶ 7 Section 10(a) of the Act provides, in pertinent part:

> "(a) An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, *on or after the effective date of this Act suffers a catastrophic injury* or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support." (Emphasis added.) 820 ILCS 320/10(a) (West 2014).

The Act took effect on November 14, 1997 (Pub. Act 90-535, § 10 (eff. Nov. 14, 1997)).

¶ 8 In *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 397 (2003), our supreme court concluded that the phrase " 'catastrophic injury' " was ambiguous. After examining the Act's legislative history, however, the *Krohe* court held that " 'catastrophic injury' " means "an injury resulting in a line-of-duty disability." *Id.* at 400. Although plaintiff's disability stemmed from an injury that he received in 1992, he maintains that, for purposes of the Act, the injury was not "catastrophic" at the time of the shooting. Plaintiff ultimately returned to duty and he continued to serve with the Itasca police department until November 4, 2000. Relying primarily on *Nowak v. City of Country Club Hills*, 2011 IL 111838, plaintiff argues that "after that point, his injury manifested itself into a catastrophic injury as defined by Illinois law becoming career ending and resulting in a line-of-duty disability." Plaintiff insists that, because there was no determination that his injury was a "catastrophic injury" until he was awarded line-of-duty disability benefits in June 2001, "he qualified for benefits having suffered a 'catastrophic injury' on or after the effective date of the Act."

¶ 9 There appears to be no dispute, however, that plaintiff's action seeking benefits under the Act was subject to a five-year statute of limitations (735 ILCS 5/13-205 (West 2014)). Plaintiff did not file suit until 2013, even though he now contends that he became entitled to benefits in 2001. Although the Village raised the statute of limitations in its summary-judgment motion, the trial court concluded that, pursuant to the discovery rule, the limitations period did not commence until 2011, when our supreme court issued its decision in *Nowak*. The Village argues that the trial court's ruling on the limitations defense was erroneous. We agree. As a preliminary matter, however, we must consider whether the question is properly before us.

¶ 10    Citing *Stevens v. Village of Oak Brook*, 2013 IL App (2d) 120456, ¶ 41, plaintiff argues that, because the Village did not cross-appeal from the trial court's judgment, our review is confined to the issues that plaintiff raised. In *Stevens*, the plaintiff brought a *mandamus* action against the municipality that had employed him as a part-time building inspector. *Id.* ¶ 3. The plaintiff sought to compel the municipality to complete paperwork that would enable him to receive credit toward his pension for part-time employment from 1980 to 2000. *Id.* ¶ 5. The trial court entered judgment for the plaintiff, but limited the credit to his employment from *1982* to 2000. *Id.* ¶ 8. The plaintiff appealed and the municipality cross-appealed. *Id.* ¶ 10. However, the plaintiff's appeal was dismissed, so the municipality was designated the appellant. *Id.* ¶ 11. We affirmed the judgment awarding the plaintiff 18 years of credit toward his pension. But, because we had dismissed the plaintiff's appeal, we refused to consider the plaintiff's argument that he was entitled to credit for 20 years, rather than 18.

¶ 11    *Stevens* is readily distinguishable from the case before us inasmuch as the plaintiff in *Stevens* sought relief beyond that afforded by the judgment. Here, the Village seeks merely to affirm the summary judgment entered in its favor. It is well established that "we review the trial court's judgment, not its reasoning, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct." *Suchy v. City of Geneva*, 2014 IL App (2d) 130367, ¶ 19. That the judgment included a finding on the limitations question that was unfavorable to the Village does not alter the analysis. It is clear that a judgment is not adverse to a party merely because it includes one or more findings adverse to that party. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387-88 (1983). Consequently, "[f]indings of the trial court adverse to the appellee do not require the appellee's cross-appeal if the judgment of the trial court was not at least in part against the appellee." *Id.* at 387.

¶ 12    We therefore consider whether plaintiff's action was timely under the discovery rule. "The discovery rule postpones the start of the limitations period until a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused." *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 52. What plaintiff contends that he did not know, and should not have reasonably known, is that the Act would eventually be interpreted in a manner supporting his claim. The argument reflects an understanding of the discovery rule that appears to us to be both novel and untenable: that limitations periods do not run for claims that depend on unsettled points of law. Plaintiff cites no precedent applying the discovery rule in this manner. Indeed, the discovery rule has been formulated as calling for " 'an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential *facts* of injury and cause.' " (Emphasis added.) *Axe v. Norfolk Southern Ry. Co.*, 2012 IL App (5th) 110277, ¶ 11 (quoting *Fries v. Chicago & Northwestern Transportation Co.*, 909 F.2d 1092, 1096 (7th Cir. 1990)). "When a plaintiff is 'armed with the facts about the harm done to him,' he can protect himself against the running of the statute of limitations by seeking advice in the *** legal community about possible causes." *Id.* (quoting *United States v. Kubrick*, 444 U.S. 111, 123 (1979)). Obviously, disagreements on points of law become settled only through the initiative of the litigants and attorneys who bring the issues before the courts. The discovery rule should not be applied in a manner that encourages litigants and attorneys to wait for others to take that initiative.

¶ 13    In any event, *Nowak* did not settle any point of law that is especially germane to the issues in this case, so we fail to see how it could be the key to plaintiff's "discovery" of his cause of action. *Nowak* dealt with whether a police officer was entitled to payment of 100% of the premium for health insurance while he remained on the police department payroll following an injury that resulted in the award of line-of-duty disability benefits. During that time, the officer paid 20% of the premium (as he had before he was injured). The employer never disputed its obligation to pay the full premium after the officer received the line-of-duty disability award and his employment ended. However, the plaintiff sought reimbursement of the portion of the premium he had paid during the interval between the injury and the award of line-of-duty disability benefits. The *Nowak* court rejected the argument that benefits were available while the plaintiff remained on the payroll. That the plaintiff in *Nowak* suffered a catastrophic injury after the Act's effective date was not in dispute.

¶ 14    Whether or not plaintiff was otherwise entitled to benefits under the Act, his action was barred by the statute of limitations as a matter of law. On that basis, we affirm the summary judgment for the Village.

¶ 15    Affirmed.