2024 IL App (1st) 231538

FIRST DISTRICT,
FIRST DIVISION
July 29, 2024

No. 1-23-1538

| | | |
|---|---|---|
| BENNO CEYER, on His Own Behalf and on Behalf of His Spouse, Mariola Ceyer, and MARIOLA CEYER, | ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Petitioners-Appellees, | ) ) | No. 19 CH 381 |
| v. | ) ) | |
| THE CITY OF BERWYN, | ) ) ) | Honorable Eve M. Reilly, Judge Presiding. |
| Respondent-Appellant. | ) | |

JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1    In 2005, petitioner Benno Ceyer, a firefighter for the City of Berwyn (City), sustained a knee injury while on duty. He subsequently sought and was awarded a line-of-duty disability pension on February 18, 2015, retroactive to October 11, 2008.

¶ 2    Under section 10 of the Public Safety Employee Benefits Act (Act) (820 ILCS 320/10 (West 2018)), firefighters who suffer a catastrophic injury[1] in responding to an emergency are entitled to payment of health insurance premiums by their employer. In 2019, Ceyer filed a petition against the City, seeking reimbursement for health insurance premiums he paid between October 11, 2008, and February 18, 2015. The trial court granted summary judgment for Ceyer,

---

[1]A "catastrophic injury" is defined as "an injury resulting in a line-of-duty disability" under section 4-110 of the Illinois Pension Code (40 ILCS 5/4-110 (West 2000)). *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 400 (2003).

finding that "the effective date of plaintiff's entitlement to the payment of premiums for basic group health insurance *** is December 23, 2008." The court further found that Ceyer did not have access to health insurance payable from any other source, as would relieve the City of its obligation to provide health insurance under the Act. For the reasons that follow, we affirm.

¶ 3                                     I. BACKGROUND

¶ 4        On July 1, 2005, Ceyer injured his right knee while responding to an emergency fire alarm. Following multiple surgeries and a period of many months, when he was unable to perform any work, he was placed on light duty. On January 8, 2008, his treating surgeon recommended permanent work restrictions that would prohibit him from returning to full duty.

¶ 5               A. Ceyer's Application for Line-of-Duty Disability Benefits

¶ 6        On February 28, 2008, Ceyer applied for permanent line-of-duty disability benefits from the City of Berwyn Firefighters' Pension Fund (Pension Fund). See 40 ILCS 5/4-110 (West 2006). While his application was pending, he used his accumulated sick time and vacation time to remain on the City's payroll until October 11, 2008, when he ceased to be a covered employee under the City's basic group health insurance program.

¶ 7        On December 23, 2008, the Pension Fund voted to deny line-of-duty disability benefits. Ceyer sought administrative review in the circuit court. *Ceyer v. Board of Trustees of the Berwyn Firefighters' Pension Fund*, No. 09-CH-15997 (Cir. Ct. Cook County). On January 28, 2010, the circuit court, per Judge Peter Flynn, issued a *sua sponte* order in which it observed that the hearing officer had a "dual role" as the attorney for the Pension Fund and "appears to have acted not as a neutral hearing officer, but as an advocate." *Ceyer v. Board of Trustees of the Berwyn Firefighters' Pension Fund*, No. 09-CH-15997 (Cir. Ct. Cook County, Jan. 28, 2010). The court requested briefing on whether Ceyer's right to an impartial hearing was impaired.

¶ 8        Following briefing by the parties, on March 24, 2010, the court expressed "considerable concern" that the conduct of the hearing officer was "substantially other than neutral" and found that "the agency's determination and the non-level playing field which was evinced during the hearing seem to be related to each other to some degree." The court vacated the Pension Fund's decision and remanded for a new hearing.

¶ 9        On remand, additional examinations of Ceyer were conducted, and multiple hearings were held before the Pension Fund. On February 18, 2015, the Pension Fund issued a "final and appealable" decision granting Ceyer a line-of-duty disability pension "effective the date of his removal from the City's payroll," which was October 11, 2008.

¶ 10                                    B. The Instant Action

¶ 11        On January 1, 2019, Ceyer and his wife, Mariola Ceyer (Mariola), filed the instant petition in the circuit court, alleging that under the Act, Ceyer was entitled to "payment and reimbursement of out-of-pocket health insurance premium payments made on [his] own behalf and on behalf of his wife beginning October 11, 2008, and continuing through present."[2]

¶ 12        The parties filed cross-motions for summary judgment. On February 16, 2021, the court granted partial summary judgment for Ceyer, stating:

> "Summary judgment is granted that the effective date of plaintiff's entitlement to the payment of premiums for basic group health insurance under 820 ILCS 320/10 is December 23, 2008. A genuine issue of material fact exists as to whether alternate group health insurance was available to the plaintiff and, if so, when it became so available."

---

[2] The complaint also contained a count alleging that Mariola was entitled to payment of health insurance premiums, which the City ceased making on May 29, 2017, on the basis that Mariola turned 65 and was entitled to Medicare health coverage. The trial court granted summary judgment for the City on this count, which is not contested on appeal.

¶ 13   Subsequently, the parties filed cross-motions for summary judgment on the remaining issue of whether Ceyer had access to health insurance benefits "payable from any other source." 820 ILCS 320/10(a)(1) (West 2018) ("Health insurance benefits payable from any other source shall reduce benefits payable under this Section."). The evidence adduced in support of the parties' motions was as follows: In 1980, Ceyer became the sole proprietor of a business known as Weimer Machine (WM). In March 2014, Ceyer registered the business as a limited liability company of which he was the sole ownership member. WM has never purchased group health insurance covering its employees, including Ceyer and Mariola.

¶ 14   Two WM employees, Richard Pietraszewski and Clayton Rausch, had health insurance policies with Blue Cross Blue Shield. Carol Kalins, the insurance agent who sold Pietraszewski and Rausch their policies, stated in an affidavit that these were individual health insurance policies that would have been available to the public generally and that she never sold a group health insurance policy covering some or all of the employees of WM. From March 20, 2009, to July 23, 2021, WM paid the premiums for Pietraszewski and for Rausch. Ceyer explained in an affidavit that he paid Pietraszewski's premiums because he is Pietraszewski's stepfather and he paid Rausch's premiums "because of his excellent job performance and natural skills." He "ha[s] not paid any other premiums for any other individual insurance policy selected by any other employee, including [him]self."

¶ 15   On July 26, 2023, the trial court granted plaintiffs' motion for summary judgment. The court stated that although Ceyer "was capable of paying for insurance," "to find that 'payable from any other source' under [the Act] includes a beneficiary's individual capacity to go buy themselves insurance would be inconsistent with the purpose of [the Act]." Accordingly, the

court found that plaintiffs were entitled to Act benefits "payable from December 23, 2008, until each individual becomes eligible for Medicare benefits."

¶ 16   Following the City's notice of appeal, we granted leave to the Illinois Municipal League (IML) to file an *amicus curiae* brief in favor of the City and granted leave to the Associated Firefighters of Illinois (AFFI) to file an *amicus curiae* brief in favor of appellees.

¶ 17                                    II. ANALYSIS

¶ 18   Summary judgment is appropriate where "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). We construe the record strictly against the movant and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). To prevail, the nonmoving party must present some evidence that would arguably entitle it to recover at trial. *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 472 (2010). We review the trial court's grant of summary judgment *de novo*. *Williams*, 228 Ill. 2d at 417.

¶ 19                              A. Statute of Limitations

¶ 20   An Act claim must be filed "within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 2018). See *Hancock v. Village of Itasca*, 2016 IL App (2d) 150677, ¶ 9. The City argues that Ceyer's cause of action accrued on December 23, 2008, when the Pension Fund initially denied his application for a line-of-duty disability pension, thus rendering the instant suit time-barred.

¶ 21   For statute-of-limitations purposes, a cause of action accrues "when the plaintiff knew or reasonably should have known that [he] was injured and that the injury was wrongfully caused." (Internal quotation marks omitted.) *Hassebrock v. Ceja Corp.*, 2015 IL App (5th) 140037, ¶ 28. Here, the injury claimed by Ceyer is the City's denial of benefits to which he is allegedly entitled

under section 10 of the Act. This claim was not ripe until the February 18, 2015, decision awarding him a line-of-duty disability pension. See *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 400 (2003) (defining "catastrophic injury" as "an injury resulting in a line-of-duty disability"). Prior to that date, any suit for benefits would have been premature. Notably, under the City's interpretation, the statute of limitations for Ceyer's claim would have expired in 2013, years before the decision that made him entitled to such benefits. It is well established that statutes of limitations "are intended to prevent stale claims, not to preclude claims before they are ripe for adjudication." (Internal quotation marks omitted.) *Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307, 324-25 (2007). Accordingly, Ceyer's suit, filed within five years of the award of a line-of-duty disability pension, is not time-barred.

¶ 22        The City argues this case is analogous to *Hancock*, 2016 IL App (2d) 150677, ¶ 14, in which plaintiff's suit for Act benefits was time-barred where he was awarded a line-of-duty disability pension in 2001 but did not file suit until 2013. *Hancock* is inapposite, since Ceyer filed the instant action within five years of being awarded his line-of-duty disability pension.

¶ 23        The City's reliance on *Schmalz v. Village of North Riverside*, No. 1:21-cv-01684, 2023 WL 2752731 (N.D. Ill. Mar. 31, 2023), is likewise misplaced. Schmalz, a former policeman, was awarded a line-of-duty disability pension in 2016 but denied Act benefits in 2017. *Id.* at *1. He filed suit and, in 2020, was awarded a declaratory judgment that he was entitled to Act benefits. However, the Village of North Riverside continued to refuse to pay the benefits. *Id.* In 2021, Schmalz filed a federal suit alleging that the Village of North Riverside's denial of benefits was retaliation for protected activity in which he engaged in 2013. *Id.* In assessing whether Schmalz's suit was barred by the applicable two-year statute of limitations, the district court found that the initial alleged act of retaliation occurred in 2017 and invited Schmalz to file an amended

complaint "so that the Court can evaluate whether the refusal to pay the benefits after the November 2020 declaratory judgment truly can be considered a separate act of retaliation." *Id.* at *3. *Schmalz* does not support the City's contention that the statute of limitations for Act-related claims begins to run before the grant of a line-of-duty disability pension.

¶ 24                    B. When Ceyer Became Entitled to Act Benefits

¶ 25        We next consider whether, as the City argues, Ceyer became entitled to Act benefits on the date he was awarded a line-of-duty disability pension (February 18, 2015), or, as the circuit court found, on the date of the Pension Fund's initial denial of benefits (December 23, 2008).

¶ 26        Section 10(a) of the Act provides, in relevant part:

> "An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, on or after the effective date of this Act suffers a catastrophic injury *** shall pay the entire premium of the employer's health insurance plan for the injured employee [and] the injured employee's spouse ***." 820 ILCS 320/10(a) (West 2018).

Although the best indication of legislative intent is the statutory language (*Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994)), the statute does not specify when a firefighter's entitlement to benefits begins.

¶ 27        Our supreme court addressed this issue in *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶¶ 4-5, in which the plaintiff was injured in the line of duty on August 21, 2005, and was awarded a line-of-duty disability pension on October 14, 2008, effective September 1, 2006. The sole issue was when plaintiff's right to Act benefits attached. Plaintiff argued that it was the date on which he was injured; the City of Country Club Hills (Country Club Hills) argued that it was the date on which he was awarded his pension.

¶ 28 Examining the legislative history and debates, which are "[v]aluable construction aids in interpreting an ambiguous statute" (internal quotation marks omitted) (*id.* ¶ 15), the *Nowak* court found that the "purpose of [the Act] is to 'continue' the provision of employer-sponsored health insurance coverage for an officer and/or the family of an officer who is either killed or 'catastrophically injured' in the line of duty" (*id.* ¶ 16). Thus, from a public policy standpoint, it "makes perfect sense" that the Act "kicks in" at "the very first moment that, absent special statutory protection, plaintiff's eligibility to receive City-sponsored health insurance coverage would have expired." *Id.* ¶ 17.

¶ 29 In *Nowak*, plaintiff's employment with Country Club Hills (and his employment-based health insurance benefits) ended on October 14, 2008, the same date that he was awarded a line-of-duty disability pension. Under these facts, our supreme court held that his entitlement to the Act benefits "kick[ed] in" at this "precise moment" and affirmed the circuit court's judgment in favor of Country Club Hills. *Id.* ¶¶ 17, 29.

¶ 30 By contrast, in the present case, Ceyer's eligibility for health insurance coverage expired in October 2008 when he ceased to be on the City's payroll. Following a hearing about which Judge Flynn expressed "considerable concern" that it was "substantially other than neutral," Ceyer was denied a line-of-duty disability pension on December 23, 2008, and was forced to engage in more than six additional years of litigation before finally being awarded his pension in 2015. Notably, Judge Flynn explicitly stated that the Pension Fund's denial of benefits and "the non-level playing field which was evinced during the hearing seem to be related to each other to some degree."

¶ 31 Under the City's interpretation of the statute, Ceyer's Act benefits would not "kick[ ] in" until six years after his City-sponsored health insurance coverage expired, as a direct result of the

non-level playing field evinced at his initial benefits hearing. Such an interpretation would frustrate the purpose of the statute to "continue" the provision of employer-sponsored health insurance coverage for firefighters who are catastrophically injured in the line of duty. See *id.* ¶ 16. Under these specific facts, we hold that the trial court correctly found that Ceyer's eligibility for the Act benefits commenced on December 23, 2008, the date on which the Pension Fund initially denied his application for a line-of-duty disability pension.

¶ 32    *Vaughn v. City of Carbondale*, 2016 IL 119181; *Village of Vernon Hills v. Heelan*, 2015 IL 118170; and *McCaffrey v. Village of Hoffman Estates*, 2021 IL App (1st) 200395, do not support the City's interpretation of the statute. In *Vaughn*, 2016 IL 119181, ¶ 42, the court held that an officer was not entitled to the Act benefits because, under the facts adduced at the hearing, his injury was not incurred in response to what he reasonably believed to be an emergency. In *Heelan*, 2015 IL 118170, ¶ 25, the court held that a pension board's award of a line-of-duty disability pension establishes, as a matter of law, that a claimant suffered a catastrophic injury without need for further evidence regarding the claimant's injury. In *McCaffrey*, 2021 IL App (1st) 200395, ¶¶ 42-47, the court held that once recipients become eligible for Medicare, they have access to benefits "payable from any other source" and therefore cease to be eligible for the Act benefits. Since none of these cases involved the issue of when a claimant's entitlement to the Act benefits begins, the City's reliance on them is unavailing.

¶ 33    In its *amicus* brief, the Illinois Municipal League expresses concern that our holding in this case may "adversely affect municipalities" by "allow[ing] more [Act] recipients to come out of the woodwork *** and drain municipal coffers." We emphasize that our holding is limited to the particular facts of this case, in which Ceyer was denied a line-of-duty disability pension due to a benefits hearing that was "substantially other than neutral." As a result, Ceyer was required

to engage in years of litigation before being awarded his pension. In such cases, where a claimant is deprived of years of benefits due to a "non-level playing field" at a benefits hearing, the claimant can and should be able to come forward to receive those benefits, in keeping with the legislative purpose of the Act, which is to "continue" the provision of employer-sponsored health insurance coverage once a public service officer's employment-based benefits would otherwise expire. Notably, the financial burden placed on the City as a result of our decision is no higher than if Ceyer had received a non-biased initial hearing and had been awarded a line-of-duty pension in the first instance in 2008.

¶ 34        C. Whether Ceyer Had Access to Benefits "Payable From Any Other Source"

¶ 35        Section 10 of the Act provides that "[h]ealth insurance benefits payable from any other source shall reduce benefits payable under this Section." 820 ILCS 320/10(a)(1) (West 2018). The City argues that Ceyer had access to benefits "payable from any other source" because, as sole proprietor/member of WM, he could have used company funds to pay his own insurance premiums.

¶ 36        The record reflects that, at all relevant times, Ceyer has been covered under the City's group health insurance plan. He paid his own premiums from September 2008 to May 2015, after which the City commenced making payments under the Act. At no time did Ceyer receive health insurance through WM, nor did he receive reimbursement from WM for the cost of the premiums that he paid. The City nevertheless argues that Ceyer had "access to health insurance through [his] employer" because WM paid health insurance premiums for two of its employees, Pietraszewski and Rausch, and could therefore theoretically have done the same for Ceyer.

¶ 37        We disagree. As the trial court aptly stated, "to find that 'payable from any other source' under [the Act] includes a beneficiary's individual capacity to go buy themselves insurance

would be inconsistent with the purpose of [the Act]." Indeed, such an interpretation would entirely vitiate the statute. We will not interpret a statute "in a manner that makes [it] meaningless." *Boucher v. 111 East Chestnut Condominium Ass'n*, 2018 IL App (1st) 162233, ¶ 18.

¶ 38     The City argues that the instant case is analogous to *McCaffrey*, 2021 IL App (1st) 200395, ¶ 42, in which the court held that if a claimant is eligible for Medicare, even if she chooses not to take advantage of that coverage, the employer is relieved of its obligation to pay her health insurance benefits under the Act. *McCaffrey* is distinguishable because, in the instant case, Ceyer was not "eligible" for health insurance benefits from WM since WM did not provide a group health care insurance policy of which Ceyer "opted out" (see *id.*). Under the facts of this case, WM's unilateral payments to Pietraszewski and Rausch for their individual health insurance policies did not give Ceyer access to health insurance benefits within the meaning of section 10(a)(1).

¶ 39                                III. CONCLUSION

¶ 40     For the foregoing reasons, we affirm the judgment of the trial court.

¶ 41     Affirmed.

***Ceyer v. City of Berwyn*, 2024 IL App (1st) 231538**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-381; the Hon. Eve M. Reilly, Judge, presiding. |
| **Attorneys for Appellant:** | Robert E. Luedke, of Del Galdo Law Group, LLC, of Berwyn, for appellant. |
| **Attorneys for Appellee:** | Thomas W. Duda, of Palatine, for appellees. |
| ***Amicus Curiae*:** | Paul Denham, of Clark Baird Smith LLP, of Rosemont, for *amicus curiae* Illinois Municipal League. |
| | Margaret Angelucci and Joseph Weishampel, of Asher, Gittler & D'Alba, Ltd., of Chicago, for *amicus curiae* Associated Firefighters of Illinois. |